**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ROBERT L. JOHNSON, Sr., ANTHONY L. RICHARDSON, SHEILA M. SYDNOR, and DEBORAH A. SPARKS, individually, and on behalf of all others similarly situated,** | ) ) ) ) ) | |
| | ) | **Cause No: _____** |
| **Plaintiffs,** | ) ) | |
| | ) | **CLASS ACTION** |
| **vs.** | ) ) | |
| **ALLSTATE INSURANCE COMPANY,** | ) ) | |
| **Defendant.** | ) | |

---

## ORIGINAL COMPLAINT

COME NOW Plaintiffs ROBERT JOHNSON, ANTHONY RICHARDSON, SHEILA SYDNOR, and DEBORAH SPARKS, individually, and on behalf of all others similarly situated, by and through their undersigned counsel, on information and belief, and for their Complaint against Defendant ALLSTATE INSURANCE COMPANY state as follows:

1.      Illinois, like all states, mandates that insurers treat similar risks alike and different risks differently.  Indeed, this is the fundamental concept underlying what is commonly referred to in insurance parlance as "fair discrimination."

2.      Unfair discrimination in premiums, rates, or fees, on the other hand, is prohibited. Unfair discrimination is the practice of charging different premiums, policy fees, or rates to individuals with similar insurance risk.

3.      As part of its rating system, Defendant Allstate Insurance Company ("Allstate") currently utilizes – and has in the past utilized  – credit scoring algorithms to calculate insurance premiums.  However, Allstate utilizes multiple algorithms that produce vastly different results.  As a

result, policyholders with identical risks can have different insurance scores and consequently different premiums.

4.      This practice not only violates state law but has caused measurable economic damages to an ascertainable class.  This suit seeks to recover those damages.

## PARTIES, JURISDICTION AND VENUE

5.      Robert Johnson is a natural person and citizen and resident of the Southern District of Illinois.

6.      Anthony Richardson is a natural person and citizen and resident of the Southern District of Illinois.

7.      Sheila Sydnor is a natural person and citizen and resident of the Southern District of Illinois.

8.      Deborah Sparks is a natural person and citizen and resident of the Southern District of Illinois.

9.      Members of the proposed plaintiff class include citizens of States other than Illinois.

10.     All references to "Plaintiff(s)" throughout this Complaint are made on behalf of the named Plaintiffs and the Class, and vice versa.

11.     Defendant Allstate Insurance Company ("Allstate") is and has at all times relevant to this Complaint been a citizen of Illinois as it is an Illinois insurance company with its principal place of business in Illinois.

12.     The amount in controversy in this action, as defined by 28 U.S.C. § 1332(d)(6), exceeds $5,000,000 exclusive of costs and interest.

13.     Allstate is a resident of the Southern District of Illinois as it is has ongoing and systematic contacts with residents of the Southern District of Illinois.  Allstate has, at all material

times, conducted business, including the sale of insurance to residents of the U.S. in the Southern District of Illinois. Moreover, Allstate has sufficient minimum contacts with the State of Illinois such that the assumption of jurisdiction will not offend traditional notions of fair play and substantial justice.

14.     Defendant performs, and at all times relevant herein has performed, all underwriting, rating and credit scoring for each private passenger automobile, homeowners', motorcycle, and/or renters' insurance policy that is written in the United States by any of the Allstate entities[1] at its headquarters in Illinois.

15.     Defendant's Illinois-based actuaries created the proprietary credit scoring algorithms and methodologies that it employs, and at all times relevant  herein has employed, at its Illinois headquarters to provide underwriting, rating and credit scoring for each private passenger automobile, homeowners', motorcycle and renters' policy that is written in the United States by any of the Allstate Entities.

16.     Defendant's actuarial employees located at its Research and Development Center in Illinois created a series of uniform insurance scoring algorithms that were applied nationwide to each private passenger automobile, homeowners', motorcycle and renters' policy that was written in the United States by any of the Allstate Entities.

17.     Defendant's actuarial employees located at its Research and Development Center in Illinois established uniform insurance scoring breakpoints that were applied in a uniform fashion nationwide to segregate its insureds.

---

[1] Defendant sells private passenger automobile, homeowners', motorcycle and renters' insurance nationwide either directly or through one of various Allstate Entities (hereinafter "Allstate Entities").  For purposes of this complaint, the Allstate Entities include: Allstate Fire & Casualty Insurance Co., Allstate Indemnity Insurance Co., Allstate Floridian Indemnity Co., Allstate Insurance Co., Allstate New Jersey Insurance Co., Allstate New Jersey Property & Casualty Insurance Co., and Allstate Property & Casualty Insurance Co.

18.     Defendant maintains – at its headquarters in Illinois – the files and records of contracts of insurance for each private passenger automobile, homeowners', motorcycle and renters' policy that is written in the United States by any of the Allstate entities.  For example, each of the Allstate Entities that sell homeowners' and/or private passenger automobile insurance in Florida maintains Illinois addresses for (1) administrative; (2) home; (3) mailing; (4) policy holder relations; and (5) location of records.

19.     Pursuant to 215 ILCS 5/121(2)(b), "maintaining files or records of contracts of insurance" in Illinois is "deemed to constitute transacting insurance business in" Illinois.

20.     Defendant receives payment of premiums for contracts of insurance sold either directly or through each of various Allstate Entities at its headquarters in Illinois.  Pursuant to 215 ILCS 5/121(2)(c), "receiving payment of premiums for contracts of insurance" in Illinois is "deemed to constitute transacting insurance business in" Illinois.

21.     When reference in this Complaint is made to any act or omission of Defendant, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of Defendant committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendant, and did so while acting within the scope of their employment or agency.

## STATEMENT OF FACTS

22.     Defendant sells private passenger automobile, homeowners', motorcycle and renters' insurance nationwide either directly or through one of various Allstate Entities.  These policies are sold nationwide under the service mark "Allstate."

23.     Plaintiffs are some of the citizens insured by Allstate who paid all premiums and other charges due and owing under their policies.

24.     Illinois law mandates that insurers treat like similar risks alike and different risks differently.  Indeed, this is the fundamental concept underlying what is commonly referred to in insurance parlance as "fair discrimination."

25.     Unfair discrimination in premiums, rates, or fees, on the other hand, is prohibited. Unfair discrimination is the practice of charging different premiums, policy fees, or rates to individuals with similar insurance risk.

26.     Defendant performed, and at all times relevant herein has performed, all underwriting, rating and credit scoring for each private passenger automobile, homeowners', motorcycle and renters' policy that is written in the United States by any of the Allstate entities at its headquarters in Illinois.  Defendant, in so doing, determines the price of insurance for all of its customers as well as all customers of each of the Allstate Entities.

27.     To determine the price of insurance for each insured, Defendant's Illinois-based actuaries created proprietary credit scoring algorithms and methodologies.

28.     Allstate currently utilizes – and has in the past utilized  –  multiple formulas to calculate insurance premiums.  As a result, policyholders with identical risks can have different insurance scores and consequently different premiums.

29.     Plaintiff Robert Johnson purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes

30.     Plaintiff Anthony Richardson purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes

31.     Plaintiff Sheila Sydnor purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes

32.     Plaintiff Deborah Sparks purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes

33.     Through the simultaneous use of multiple and differing insurance scoring schemes, Defendant has continuously and systematically engaged in an unlawful pattern and practice of unfair discrimination against consumers nationwide in the determination of rates, premiums, policy pricing, and/or availability of insurance.  The use of multiple and differing insurance scoring schemes is not based on sound actuarial principles.  Nevertheless, Defendant has used multiple and differing insurance scoring schemes as a basis for charging varying premiums to its insureds with similar insurance risk.

34.     Plaintiffs and the Class Members, as defined below, were unaware of Defendant's wrongful conduct, and unable to discover it until 2006.

35.     Plaintiffs were damaged as a result of Defendant's practices.

**CLASS ACTION ALLEGATIONS**

36.     This action is brought as a class action by the Named Class Representative Plaintiffs on behalf of themselves and on behalf of all those similarly situated pursuant to Rule 23(a) and 23(b)(1), (2), and (3) of the Federal Rules of Civil Procedure.  The proposed class is defined as follows:

> All United States residents 1) who are shown as a named insured on the declarations page of a private passenger automobile, homeowners', motorcycle, and/or renters' insurance' policy, 2) that was issued or renewed from any of the Allstate Entities (Allstate Fire & Casualty Insurance Co., Allstate Indemnity Insurance Co., Allstate Floridian Indemnity Co., Allstate Insurance Co., Allstate New Jersey Insurance Co., Allstate New Jersey Property & Casualty Insurance Co., and Allstate Property & Casualty Insurance Co.) from August 1, 1999 through September 15, 2007, 3) for which the premium was calculated based in part on an insurance scoring algorithm

implemented by Allstate Insurance Company in Illinois, and 4) who, as a result of the use of such algorithm, was at any time assigned a credit tier rating other than the most favorable credit tier (the "Class" or "Class Members").

Specifically excluded from the Class are: Class Members whose residence at the time the declaration page was issued was in Texas; any Judge conducting proceedings in this action and their parents, spouses and children as well as any other member of their family residing in the judge's household; counsel of record in this action; the legal representatives, heirs, successors and assigns of any excluded person.

37.     The exact number of class members is not presently known, but is so numerous that joinder of individual members in this action is impracticable.  The exact number of class members can only be ascertained through discovery, because such information is in the exclusive control of Defendant.  However, based on the nature of the activities alleged herein, Plaintiffs believe that the class numbers at least in the hundreds of thousands and is geographically dispersed throughout the United States.  The names and addresses of class members are readily obtainable from the Defendant and its agents and on information and belief are maintained in the computer database of Defendant and are easily retrievable.

38.     Plaintiffs will fairly and adequately protect the interests of the class and have retained counsel that are experienced and capable in class action litigation, and in the fields of insurance and consumer law.  Plaintiffs understand and appreciate their duties to the class under FED. R. CIV. P. 23 and are committed to vigorously protecting the rights of absent class members.

39.     Named Class Representative Plaintiffs are asserting claims that are typical of the claims of each member of the class they seek to represent, in that the claims of all members of the class, including the class representatives, depend upon a showing that the Defendant engaged in unfair acts and/or omissions.  All claims alleged on behalf of the class flow from this conduct as well.  Further, there is no conflict between any class representative and other members of the class with respect to this action.

40.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  Questions of law and fact arising out of Defendant's conduct are common to all members of the class, and such common issues of law and fact predominate over any questions affecting only individual members of the class.   Common issues of law and fact include, but are not limited to, the following:

   a.     Whether Defendant's conduct constitutes an unfair or deceptive act or practice within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act;

   b.     Whether Defendant's practices violate the Illinois Consumer Fraud and Deceptive Business Practices Act;

   c.     Whether Plaintiffs and the Class Members have sustained damages and the proper measure of such damages; and

   d.     Whether Plaintiffs and the Class Members are entitled to punitive damages and/or civil penalties.

41.     The relief sought is common to the entirety of the class.

42.     Defendant has acted on grounds generally applicable to the class, thereby making final injunctive relief or corresponding injunctive relief appropriate with respect to the class as a whole.

43.     This action is properly maintained as a class action in that the prosecution of separate actions by individual members would create a risk of adjudication with respect to individual members which would establish incompatible standards of conduct for the Defendant.

44.     This action is properly maintained as a class action in that the prosecution of separate actions by individual class members would create a risk of adjudications with respect to individual members of each class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication, or would substantially impair or impede their ability to protect their interests.

45.     A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein given that, among other things:

(i)      significant economies of time, effort, and expense will inure to the benefit of the Court and the parties in litigating the common issues on a class-wide instead of a repetitive individual basis;

(ii)     the size of most class members' individual damage claims is too small to make individual litigation an economically viable alternative, such that few class members have any interest in individually controlling the prosecution of a separate action;

(iii)    without the representation provided by Plaintiffs herein, few, if any, class members will receive legal representation or redress for their injuries;

(iv)    class treatment is required for optimal deterrence;

(v)     despite the relatively small size of many individual Class Members' claims, their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost effective basis, especially when compared with repetitive individual litigation;

(vi)    no unusual difficulties are likely to be encountered in the management of this class action;

(vii)   plaintiffs and class members have all suffered irreparable harm and damages as a result of Defendant's unlawful and wrongful conduct;

(viii)  absent a class action, Defendant will likely retain millions of dollars received as a result of its wrongdoing, and its illegal, unfair, false and misleading conduct shall go unremedied and uncorrected; and

(ix)    absent a class action, the class members will not receive restitution, will continue to suffer losses, and Defendant will be allowed to retain the proceeds of its ill-gotten gains.

46.     Concentrating this litigation in one forum would aid judicial economy and efficiency, promote parity among the claims of individual Class Members, and result in judicial consistency.

## COUNT I
## Illinois Consumer Fraud Act – Omission

47.     Plaintiffs incorporate the allegations contained in Paragraphs 1 through 46 as if fully set out herein.

48.     At all times relevant hereto, Plaintiffs, Class Members, and Defendant were either natural persons or their legal representatives, partnerships, corporations, companies, trusts, business entities, or associations.

49.     Plaintiffs and Class Members purchased the insurance at issue herein for their use or that of members of their households.

50.     At all times material hereto, Defendant engaged in the advertising, offering for sale, sale, and/or distribution of services.

51.     The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, provides in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use of employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practices described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 6, 1965, in conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been mislead, deceived, or damaged thereby.

52.     Defendant, by and through its employees, agents, and/or servants, engaged in unlawful schemes and courses of conduct with regard to the sale and marketing of its insurance through the omission, suppression and/or concealment from Plaintiffs and Class Members of Defendant's use of multiple and differing insurance scoring schemes that result in higher premiums for Plaintiffs and the Class.

53.     The facts that Defendant concealed, suppressed or omitted as alleged above were material, in that such facts are the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to Defendant's insurance.

54.     Defendant engaged in such unlawful course of conduct with the intent to induce Plaintiffs and Class Members to purchase private passenger automobile, homeowners', motorcycle, and/or renters' insurance' insurance and pay premiums above those charged to other Allstate insureds with similar insurance risk.

55.     Plaintiffs and the Class Members were damaged by such conduct in that they were charged premiums different and higher than those charged to other Allstate insureds with similar insurance risk.

56.     The unfair acts and/or practices of the Defendant alleged herein occurred in connection with Defendant's conduct of trade and commerce in Illinois.  Specifically, the omission, suppression and/or concealment from Plaintiffs and Class Members of Defendant use of multiple and differing insurance scoring schemes occurred in Illinois.

57.     In fact, all of the circumstances that make up the fraudulent transaction occur within Illinois, and all that occured out-of-state is the injury or deception.

58.     Thus, Illinois was the place where the transactions at issue took place, not merely the place from which the results of these transactions "emanated" or were "disseminated."

59.     Defendant intended for Plaintiffs and Class Members to purchase automobile and homeowners' insurance coverage in reliance on Defendant's unfair acts and/or practices.

60.     The unfair acts and/or practices of the Defendant violate the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2.

61.     As a direct and proximate result of the unfair acts and/or practices of the Defendant, Plaintiffs and Class Members were damaged in that Plaintiffs and Class Members paid premiums higher than those charged to other Allstate insureds with similar insurance risk.

WHEREFORE, Plaintiffs and the Class pray that the Court enter judgment in their favor and against Defendant as follows:

a.      Ordering that this action be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and

b.      Awarding Plaintiffs and Class Members compensatory damages, prejudgment interest, costs of suit, and attorneys' fees.

## COUNT II
### Illinois Consumer Fraud Act - Unfairness

62.     Plaintiffs incorporate the allegations contained in Paragraphs 1 through 46 as if fully set out herein.

63.     At all times relevant hereto, Plaintiffs, Class Members, and Defendant were either natural persons or their legal representatives, partnerships, corporations, companies, trusts, business entities, or associations.

64.     Plaintiffs and Class Members purchased the insurance at issue herein for their use or that of members of their households.

65.     At all times material hereto, Defendant engaged in the advertising, offering for sale, sale, and/or distribution of services.

66.     The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, provides in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use of employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression or omission

of such material fact, or the use or employment of any practices described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 6, 1965, in conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been mislead, deceived, or damaged thereby.

67.     Through the simultaneous use of multiple and differing insurance scoring schemes, Defendant has continuously and systematically engaged in an unlawful pattern and practice of unfair discrimination against consumers in the determination of rates, premiums, policy pricing, and/or availability of insurance.  Defendant engaged in such unlawful course of conduct with the intent to induce Plaintiffs and Class Members to purchase private passenger automobile, homeowners', motorcycle, and/or renters' insurance and pay premiums above those charged to other Allstate insureds with similar insurance risk.

68.     Defendant's acts or practices were "unfair" as they offend public policy, are immoral, unethical, oppressive, or unscrupulous, and/or cause substantial injury to consumers.

69.     Defendant's acts or practices offend the clearly stated public policy prohibiting discrimination in the making and selling of insurance as set forth in, *inter alia*, 215 ILCS 5/364 and 50 Ill. Admin. Code § 906.10.

70.     Defendant's acts or practices are immoral and unethical as they serve only to benefit Defendant to the detriment of the consuming public.

71.     Defendant's acts or practices were likely to cause, and did cause, substantial injury to consumers.  These acts resulted in Defendant receiving millions of dollars in revenue to which Defendant is not entitled.

72.     The injuries cause by Defendant's acts or practices, namely consumers' monetary losses, are not outweighed by any countervailing benefit to consumers or competition.  Defendant's unfair acts served no purpose other than to increase its own profits.

73.     These injuries were not reasonably avoidable.  Because Defendant was the sole source of material information that Defendant failed to disclose, consumers could not have had reason to anticipate the impending harm and thus avoided their injuries.

74.     Defendant knew that its use and implementation of credit scoring was not based on sound actuarial principles.

75.     Defendant knew that, through the simultaneous use of multiple and differing credit scoring schemes, it was charging varying premiums to insureds with similar insurance risk.

76.     Plaintiffs and the Class Members were damaged by such conduct in that they were charged premiums different and higher than those charged to other Allstate insureds with similar insurance risk.

77.     The unfair acts and/or practices of the Defendant alleged herein occurred in connection with Defendant's conduct of trade and commerce in Illinois.  Specifically, the unfair acts and/or practices of the Defendant alleged herein were performed and undertaken entirely in Illinois.

78.     In fact, all of the circumstances that make up the fraudulent transaction occur within Illinois, and all that occured out-of-state is the injury or deception.

79.     Defendant intended for Plaintiffs and Class Members to purchase automobile and homeowners' insurance coverage in reliance on Defendant's unfair acts and/or practices.

80.     The unfair acts and/or practices of the Defendant violate the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2.

81.     As a direct and proximate result of the unfair acts and/or practices of the Defendant, Plaintiffs and Class Members were damaged in that Plaintiffs and Class Members paid higher premiums than those charged to other Allstate insureds with similar insurance risk.

WHEREFORE, Plaintiffs and the Class pray that the Court enter judgment in their favor and against Defendant as follows:

a. Ordering that this action be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and

b. Awarding Plaintiffs and Class Members compensatory damages, prejudgment interest, costs of suit, and attorneys' fees.

**KOREIN TILLERY**

/s Stephen M. Tillery
Stephen M. Tillery
Aaron M. Zigler
One U.S. Bank Plaza
505 N. 7th Street, Suite 3600
St. Louis, MO  63101
Telephone:     (314) 241-4844
Facsimile:     (314) 450-4065
stillery@koreintillery.com
azigler@koreintillery.com

Stephen A. Swedlow
SWEDLOW & ASSOCIATES, LLC
205 N. Michigan Avenue - Suite 1940
Chicago, Illinois  60603
Telephone:     312/899-5063
Facsimile:     312/641-9555
swedlow@swedlowlaw.com
***Attorneys for Plaintiffs***

Of counsel:

**THE COCHRAN FIRM -- DALLAS, L.L.P.**
Walt D. Roper
3811 Turtle Creek Blvd., Suite 1400
Dallas, Texas 75219
Telephone:      (214) 651-4260
Facsimile:      (214) 651-4261

**BECK, REDDEN, & SECREST, L.L.P.**
A Registered Limited Liability Partnership
W. Curt Webb
David W. Jones
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone:      (713) 951-3700
Facsimile:      (713) 951-3720

**CROWLEY, DOUGLAS, & NORMAN**, L.L.P.
R. Martin Weber, Jr.
1301 McKinney, Suite 3500
Houston, Texas 77010-3092
Telephone:      (713) 651-1771
Facsimile:      (713) 651-1775

**PAYNE MITCHELL LAW GROUP**
James L. Mitchell
2911 Turtle Creek Blvd., Suite 1400
Dallas, Texas  75219
Telephone:      (214) 252-1888
Facsimile:      (214) 252-1889

**BURROW & PARROTT, L.L.P.**
David Burrow
1301 McKinney, Suite 3500
Houston, Texas 77010-3092
Telephone:       (713) 222-6333
Facsimile:      (713) 650-6333