**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ROBERT L. JOHNSON, SR., ANTHONY ) <br> L. RICHARDSON, SHEILA M. SYDNOR, ) <br> and DEBORAH A. SPARKS, individually, ) <br> and on behalf of all others similarly situated, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> ALLSTATE INSURANCE COMPANY, ) <br> ) <br> Defendant. ) | No.: 07-CV-781-MJR-PMF <br><br><br> Judge Michael J. Reagan <br><br><br> Magistrate Judge Philip M. Frazier |

**ALLSTATE INSURANCE COMPANY'S RULE 72 OBJECTION
TO MAGISTRATE JUDGE FRAZIER'S GRANT OF PLAINTIFFS'
MOTION TO COMPEL PRODUCTION OF PRIVILEGED DOCUMENTS**

Allstate Insurance Company ("Allstate"), pursuant to Federal Rule of Civil Procedure 72 and Local Rule 73.1(a), respectfully files this objection to Magistrate Judge Frazier's February 5, 2010 Order (Doc. 177) ("Production Order"), which granted plaintiffs' motion to compel the production of documents withheld as subject to the attorney-client privilege (Doc. 146).

**I.     INTRODUCTION**

The Production Order erroneously requires Allstate to "produce *all documents* listed on its privilege log that it has withheld on the basis of attorney-client privilege." (Doc. 177 at 2; emphasis supplied). The Production Order found that Allstate failed to meet its burden of establishing that a discrete type of document related to customer complaints (the "customer complaint documents") are not subject to the attorney-client privilege because one Allstate employee, Erin English, is not a member of a control group. Based solely on that finding, the Production Order as written inappropriately extrapolates the deficiency Magistrate Judge Frazier found as to the customer complaint documents to myriad different types of other attorney-client privileged documents involving diverse topics, recipients, and senders.

The customer complaint documents are simply not representative of the rest of the documents withheld based on attorney-client privilege, no evidence suggested that they were, and Magistrate Judge Frazier performed no analysis as to documents beyond plaintiffs' sample. Nonetheless, the Production Order, as written, would require production of hundreds of validly protected documents having nothing to do with the arguments presented to Magistrate Judge Frazier regarding the customer complaint documents. As a consequence, to the extent the Production Order as written reaches documents that do not pertain to customer complaints, it is overbroad and should be limited to the customer complaint documents.

Allstate's privilege log is comprised of: 2,058 documents withheld solely on the basis of the attorney-client privilege; 340 documents withheld solely on the basis of the work product doctrine; and 916 documents withheld on the basis of the attorney-client privilege *and* also the work product doctrine. (Doc. 146-1 to 146-4). Of the 2,058 documents withheld solely on the basis of the attorney-client privilege, 935 involve customer complaints and 1,123 involve attorney-client communications that are totally unrelated to customer complaints.

Plaintiffs' motion to compel was limited to documents solely withheld on the basis of the attorney-client privilege and that involve Allstate employees who purportedly do not qualify under the Illinois control group test. (Doc. 146 at 3). Magistrate Judge Frazier's review was further limited to documents involving customer complaints related to the use of insurance scoring to price insurance policies that were issued or received by a single Allstate employee, Erin English.

The 1,123 documents withheld solely on the basis of attorney-client privilege and that do not involve customer complaints, encompass very broad and disparate subject matter and a multitude of different document authors and recipients. Certain of the document authors and recipients are senior business leaders and corporate officers in Allstate's law department. A host

of attorney-client communications that go to the intersection of core business and legal issues impacting Allstate and other Allstate-affiliated issuing companies over an almost ten year period are arguably responsive to plaintiffs' very broad discovery requests. Just a few examples from Allstate's privilege log establish that there was no basis on the record before Magistrate Judge Frazier to issue an order for the blanket production of any documents withheld on the basis of the attorney-client privilege that do not relate to customer complaints.

Take, for example, document APRIV 00039. This is a January 30, 2004 communication authored by D. Lamb to Allstate attorneys, W. Boodro, E. Collins and S. Sheffey seeking legal advice regarding a Missouri Department of Insurance credit-scoring study. (Doc. 146-1 at 8). The Missouri credit-scoring study has been produced to plaintiffs at JA0648464-648516 and purportedly addresses the "Impact of Minority and Low Income Customers in Missouri." The study raises significant legal issues related to the use of insurance scoring in Missouri, and across the country. Mr. Lamb is a senior actuary at Allstate with leadership responsibilities related to Allstate's use of insurance scoring, including related legal and regulatory issues. (*See* Doc. 178-1 at 5-6). Mr. Sheffey, a Managing Counsel, has primary responsibility for insurance scoring issues in Allstate's law department. (*See* Doc. 147-1 at 15).

Another exemplar document is APRIV 002685. This is a December 2, 2002 communication authored by Allstate attorney W. Vanisi to Allstate corporate officers P. Debreceny, M. Trevino, D. Fletcher, M. Lamonica, and others and Allstate's General Counsel M. McCabe and other Allstate attorneys providing a legal analysis of the Adopted NCOIL Credit Scoring Model and actions necessary for Allstate to comply. (Doc. 146-4 at 36). The Court has been apprised that the NCOIL Credit Scoring Model was the basis for credit scoring laws passed in about half the states. (Doc. 144 at 64-66). These credit scoring laws impose significant

regulations on insurance companies, including Allstate and the Allstate-affiliated issuing companies. (*Id.*; *see*, *e.g.*, 215 ILCS 157/20 (2009)).

There are numerous other examples of documents on Allstate's privilege log withheld solely on the basis of the attorney-client privilege and that do not involve Ms. English or customer complaints. However, as the examples above demonstrate, these various other attorney-client communications involve documents authored during different time periods, a variety of subject matter and numerous different authors and recipients. Magistrate Judge Frazier made no inquiry into any of these documents or the authors or recipients of these documents. Accordingly, Magistrate Judge Frazier improperly swept these totally unrelated communications into the Production Order based solely on finding that Allstate did not meet its burden of establishing that Erin English was in a control group, and solicited legal advice, in connection with customer complaints. Accordingly, Allstate requests that the Court, at a minimum, clarify the Production Order to limit the required production to the 935 customer complaint documents that were withheld on attorney-client privilege grounds.[1]

Alternatively, Allstate respectfully requests that the Court not require the production of any document unrelated to customer complaints unless and until it makes an *in camera* inspection of the documents. Magistrate Judge Frazier appropriately followed this procedure when, through his July 23, 2008 Order (Doc. 41), he made an *in camera* inspection of twenty

---

[1] The Production Order does not appear to extend to the 916 documents withheld on the basis of both the attorney-client privilege and the work product doctrine. No documents withheld on the basis of the work product doctrine alone or both the attorney-client privilege and work product doctrine were either challenged by plaintiffs in their motion to compel or evaluated by Magistrate Judge Frazier. Further, Magistrate Judge Frazier made no findings related to any document withheld on the basis of the work product doctrine. The attorney-client privilege and work product doctrine are distinct legal privileges and must be analyzed separately. *See In re JMP Newcor Intern., Inc.*, 204 B.R. 963, 964 (Bankr. N.D. Ill. 1997) ("The attorney-client privilege belongs to the client, but the work-product doctrine belongs to both the attorney and the client.") (citing *In re Special September 1978 Grand Jury (II),* 640 F.2d 49, 62 (7th Cir. 1980)).

(20) documents selected by plaintiffs and determined that all of these documents were properly withheld by Allstate. (Doc. 42).

With respect to the customer complaint documents, Allstate respectfully requests that the Court reverse the Production Order because Magistrate Judge Frazier erred in concluding that the customer complaint documents involving Ms. English are not protected by the attorney-client privilege. Magistrate Judge Frazier appeared to accept an unfounded statement made by plaintiffs' counsel at the February 4, 2010 telephonic hearing that Allstate presented "no evidence" that the credit team of which Ms. English was a part communicated with lawyers. (Doc. 179 at 13). However, the only evidence in the record, undisputed by plaintiffs, establishes that the English customer complaint documents reflect communications with lawyers soliciting legal advice. In addition, Magistrate Judge Frazier improperly considered Allstate's privilege assertions en masse without evaluating any specific document or making an *in camera* inspection of a single document. Magistrate Judge Frazier further misconstrued the Illinois control group test and failed to properly consider the undisputed evidence that Ms. English is in a control group based on the specialized expertise regarding determining insurance scores that Allstate necessarily relied on in responding to customer complaints and that involved the solicitation of legal advice from Allstate's counsel.

Finally, in its Motion for Clarification and Reconsideration currently pending before Magistrate Judge Frazier (Doc. 178), Allstate has requested a stay of the production deadline for privileged documents until Allstate's Motion is resolved, including this appeal, and Allstate reiterates that request here.[2] Plaintiffs waited until the close of discovery, after two years of litigation, to first challenge Allstate's withholding of certain documents on privilege grounds. There is no good reason to expedite production of any documents currently withheld for

---

[2] Allstate is making a provisional production of the customer complaint documents subject to the Court's final decision on Allstate's appeal.

attorney-client privilege until the Court has the full opportunity to reverse or, at a minimum, clarify the Production Order.

## II. BACKGROUND

### A. The Court's Prior Approval Of Allstate's Privilege Claims

Allstate served its initial privilege log on plaintiffs on July 16, 2008 (with 68 entries) and then supplemented the privilege log on October 14, 2008 (with 354 entries), March 23, 2009 (2,223 entries) and July 20, 2009 (763 entries). On July 23, 2008, Magistrate Judge Frazier issued an Order directing plaintiffs to select twenty (20) documents from Allstate's privilege log for the Court to review *in camera*. (Doc. 41). Eighteen (18) of these documents were withheld on the basis of both the attorney-client privilege and work product doctrine, one (1) document was withheld solely based on the work product doctrine, and one (1) document was withheld solely based on the attorney-client privilege. (Doc. 178-5; Doc. 146-1 at 1, 4, 7-8, 10-12, 14). On August 7, 2008, Magistrate Judge Frazier issued an Order finding that each of these documents were properly withheld under both legal privileges. (Doc. 42). For the next year, Allstate continued its privilege review and compiled its privilege log in accordance with the same procedures applied to the initial privilege claims endorsed by Magistrate Judge Frazier.

Allstate's privilege log is comprised of: 2,058 documents withheld solely on the basis of the attorney-client privilege; 340 documents withheld solely on the basis of the work product doctrine; and 916 documents withheld on the basis of the attorney-client privilege *and* also the work product doctrine. (Doc. 146-1 to 146-4).

### B. Plaintiffs' Motion To Compel

After two years of litigation, and at the close of the discovery period, plaintiffs first raised a challenge to certain of the documents Allstate withheld based on legal privileges at the Discovery Dispute Conference on December 11, 2009. ***Plaintiffs' challenge was limited to***

- 6 -

***documents withheld solely based on the attorney-client privilege, not any other legal privilege.***
(Doc. 146 at 3). Plaintiffs' arguments were further limited to communications involving Allstate employee Erin English, and several other employees, who were issuers or recipients of these documents. Plaintiffs' position was that Ms. English and these other employees do not come within a control group under Illinois law. The only support plaintiffs offered for their position was where Ms. English and these other employees resided on a corporate organizational chart. (Doc. 146 at 4-5).

Magistrate Judge Frazier correctly recognized that simply identifying where an employee resides on a corporate organizational chart is not sufficient to show that the employee is outside of a control group under Illinois law. (Doc. 144 at 131-32, 135-36). Magistrate Judge Frazier noted that there "is not a super bright line that people jump through in and out of various control groups" and that "it is a factually sensitive investigation." (*Id*. at 131-32). Magistrate Judge Frazier permitted plaintiffs to submit a brief "as to exactly why it is [Erin English] should be excluded [from the control group]." (*Id*. at 139). Furthermore, plaintiffs were not simply to come forward with evidence of where Ms. English resides on a corporate organizational chart. Instead, Magistrate Judge Frazier instructed plaintiffs' counsel to "[p]ick some examples" of specific documents withheld by Allstate on the basis for attorney client privilege for purposes of the briefing. (*Id*.; *see also* Doc. 177 at 1).

Plaintiffs' motion to compel did not respond to Magistrate Judge Frazier's directives. Plaintiffs simply made a blanket assertion that Allstate waived the attorney-client privilege for over 2,000 documents withheld from production solely on the basis of attorney-client privilege and solely based on where Ms. English and several other employees reside on an corporate organizational chart. (Doc. 146 at 3, 6). Plaintiffs did not identify a single exemplar document on Allstate's privilege log to which Allstate could respond and that Magistrate Judge Frazier

could review in order to engage in the "factually intensive analysis" required to address plaintiffs' privilege challenge.

Allstate's opposition pointed out, *inter alia*, that plaintiffs' motion to compel failed to conduct the fact and document specific analysis required under Illinois law. (Doc. 147). Allstate also reiterated that it withheld nearly 1,000 documents on bases in addition to the attorney-client privilege and, therefore, these other bases claimed for the withholding of each individual document must be assessed, in addition to applying the control group test to each document. (*Id.* at 2). Allstate further asserted that the review of these other bases must take into consideration the record evidence before the Court that demonstrates that Allstate has been involved in various credit-related cases and state regulatory actions over the past decade, all of which have resulted in the generation of scores of documents in the course of Allstate's defense of the cases. (*Id.* at 2, citing Doc. 70 ¶ 17).

On February 4, 2010, Magistrate Judge Frazier conducted a telephonic hearing on plaintiffs' motion to compel and he issued the Order granting plaintiffs' motion on February 5, 2010. (Doc. 177).

## III.   ARGUMENT

### A.   Standard Of Review And Bases For Objection.

A magistrate judge's discovery order must be reversed or modified where it "is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). A finding may be clearly erroneous even where there is evidence to support it if, on a review of the entire record, the court "is left with the definite and firm conviction that a mistake has been committed." *Bobkoski v. Bd. of Educ. of Cary Consol. Sch. Dist. 26*, 141 F.R.D. 88, 90 (N.D. Ill. 1992) (reversing magistrate judge's order, in part) (internal quotations omitted).

The Production Order is clearly erroneous and contrary to law because Magistrate Judge Frazier misunderstood and misapplied Illinois privilege law, misunderstood the positions of the parties including the facts presented in connection with plaintiffs' motion to compel, and made a decision outside of the adversarial issues presented to the Court by apparently ordering the production of a broad swath of privileged documents that plaintiffs did not challenge and Magistrate Judge Frazier did not review. As a result, and as set forth below, the Production Order granting plaintiffs' motion to compel resulted from either the clearly erroneous application of legal standards related to the attorney-client privilege and the work product doctrine, or the adoption of standards that are contrary to law, and the Production Order must be reversed, or, at a minimum, clarified.

> **B.      The Court Should Clarify The Production Order To Exclude Documents Withheld On The Basis Of The Attorney-Client Privilege That Do Not Relate To Customer Complaints.**

The only documents challenged by plaintiffs in their motion to compel were documents withheld solely on the basis of the attorney-client privilege. (Doc. 146 at 3, 6). Magistrate Judge Frazier further limited his review to those attorney-client privileged documents that involve Allstate employee Erin English and customer complaints. There are 935 documents that Allstate withheld solely on the basis of the attorney-client privilege and that relate to customer complaints, of which documents involving Ms. English are a sub-set. (The privilege log entries for these documents are found at Doc. 178-2). There are 1,123 documents withheld solely on the basis of the attorney-client privilege that do not involve Ms. English and customer complaints. (The privilege log entries for these documents are found at Doc. 178-3).

The excerpts of Allstate's privilege log at Document 178-3 establish that Magistrate Judge Frazier misapprehended the wide variety of different types of documents on Allstate's privilege log when stating in the Production Order that: "During the February 4, 2010 discovery

- 9 -

hearing, Erin English was the employee whom the Court and the parties used as an example to understand *why Defendant was claiming an attorney-client privilege with respect to most of the documents on its privilege log*." (Doc. 177 at 2; emphasis supplied). It is not the case that the English customer complaint documents represent "most of the documents on Allstate's privilege log."

As demonstrated through the examples discussed on pages 3-4 above, and further reflected from a review of the descriptions of the other 1,123 documents on Allstate's privilege log withheld solely on the basis of the attorney-client privilege and unrelated to the customer complaints, these documents were authored during different time periods, cover a variety of subject matter and involve numerous different authors and recipients other than Erin English. (*See*, *supra*, Section I and Doc. 178-3). Magistrate Judge Frazier made no inquiry into any of these documents or the authors or recipients of these documents. Accordingly, Magistrate Judge Frazier improperly swept hundreds of totally unrelated communications into the Production Order based on his finding that Allstate did not meet its burden of establishing that Erin English was in a control group, and solicited legal advice, in connection with customer complaints.

Plaintiffs did not make a challenge to any of these other particular documents, the parties did not present any evidence related to these specific documents and Magistrate Judge Frazier did not entertain any argument on these other documents. Accordingly, at a minimum, the Court should clarify the Production Order to exclude these documents because the determination of whether *these* documents were properly withheld on the basis of the attorney-client privilege was not even part of the adversarial issues adjudicated by Magistrate Judge Frazier through the Production Order. *See*, *e.g.*, *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.*, 616 F. Supp. 2d 805, 829 (N.D. Ill. 2009) (recognizing that a motion for reconsideration should

be granted when the court "commits manifest error by making its decision outside the adversarial issues properly presented by the parties").

Accordingly, the Court should clarify the Production Order and exclude from its scope all documents except the customer complaint documents withheld solely on the basis of the attorney-client privilege and identified on Document 178-2.[3]

### C. A Review Of Specific Documents Is Required To Perform The Factually Intensive Analysis Necessary To Evaluate Allstate's Privilege Claims.

At the December 11, 2009 Discovery Dispute Conference, Magistrate Judge Frazier correctly recognized that simply identifying where an employee resides on a corporate organizational chart is not sufficient to show that the employee is outside of a control group under Illinois law. (Doc. 144 at 131-32, 135-36). Magistrate Judge Frazier explained, "[i]t depends on what the document is, what it is -- what they are seeing and what they're doing" and noted that there "is not a super bright line that people jump through in and out of various control groups" and that "it is a factually sensitive investigation." (*Id*. at 131-32).

Plaintiffs' motion to compel made a blanket assertion that Allstate waived the attorney-client privilege for over 2,000 documents withheld from production solely based on where Ms. English and several other employees reside on a corporate organizational chart. (Doc. 146 at 3, 6). Plaintiffs did not identify a single exemplar document on Allstate's privilege log to which Allstate could respond and that Magistrate Judge Frazier could review in order to engage in the document specific "factually intensive analysis" required to address plaintiffs' privilege challenge.

When the assertion of the attorney-client privilege is challenged under Illinois law, a corporation claiming the privilege has the burden of showing that "the communication originated

---

[3] If the Court will not clarify the Production Order, Allstate requests that the Court perform an *in camera* review of the documents identified on Document 178-3.

- 11 -

in a confidence that would not be disclosed; the communication was made to an attorney acting in his or her legal capacity for the purpose of securing legal advice or services; [] that [the communication] remained confidential"; and that the employee who communicated with the attorney is a member of the "control group." *Midwesco-Paschen Joint Venture For Viking Projects v. Imo Industries, Inc*., 638 N.E.2d 322, 325 (Ill. App. Ct. 1994). While Allstate's privilege log itself establishes that the communications at issue were made to lawyers, the other elements in this privilege test can only be established on a document-by-document basis.

     A document-by-document review is required because, as Allstate's privilege log reflects, each document represents separate communications, made at different times, involving different facts and circumstances and different individuals who authored and/or received the documents. It is impossible for Allstate to fairly make a showing beyond what is stated in its privilege log that the communications in these documents were made in confidence, that legal advice was solicited and that the employees who communicated in connection with the particular issue embodied in a specific document are members of a control group under Illinois law without evaluating a specific document. This is precisely what Allstate understood Magistrate Judge Frazier required when he directed plaintiffs to identify specific exemplar documents to engage in the factually intensive analysis necessary to evaluate their challenge to Allstate's privilege claims. Yet the Production Order is based entirely on Allstate's asserted failures to meet its "burdens" to establish its privilege claims en masse over more than 2,000 different documents. (Doc. 177 at 2).

     **D.    Allstate Made A Showing That The English Documents Involved The Solicitation Of Legal Advice From Allstate's Attorneys.**

     One of Magistrate Judge Frazier's two bases for ordering Allstate to produce all documents that it withheld as attorney-client privileged was Allstate's purported failure to meet its burden of showing that Erin English was involved in communications soliciting legal advice

from attorneys. (Doc. 177 at 2). Magistrate Judge Frazier may have relied upon an unsupported statement made by plaintiffs' counsel at the February 4, 2010 hearing. Plaintiffs' counsel stated that Allstate presented "no evidence" that the credit team of which Ms. English was a part communicated with lawyers. (Doc. 179 at 13). That contention is belied by the entries on Allstate's privilege log that clearly reflect communications involving Ms. English and lawyers and that legal advice is being sought through those communications. (*See*, *e.g.*, Doc. 146-2 at 69-111).

Plaintiffs did not introduce evidence to controvert any of the information in Allstate's privilege log establishing the attorney-client communications and solicitation of legal advice in the English documents. The entries on Allstate's privilege log may be relied upon to establish the propriety of Allstate's privilege claim. *See In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil*, 244 F.R.D. 434, 438 (N.D. Ill. 2007) (quoting *FMC Corp. v. Trimac*, 2000 WL 1745179, at *1 (N.D. Ill. Nov. 27, 2000)) ("[T]he context given in the privilege log sufficiently allowed the Court to determine the nature of the documents during its *in camera* review, and assess whether each document was privileged. 'The purpose of a privilege log is to enable the opposing party and the Court to evaluate the applicability of the asserted privilege.'"). These privilege log entries were supported by the submission of deposition testimony from Ms. English evidencing that attorney advice was solicited in connection with customer complaints. (Doc. 147-1 at 10-12, 15, 18-21).

If further support for the privilege log entries is necessary to determine whether attorney advice was being solicited, an *in camera* inspection of the withheld documents will be required. Absent an *in camera* inspection, a party claiming the privilege can risk waiving that privilege in an attempt to show the solicitation of legal advice. *See*, *e.g.*, Rule 26(b)(5)(A)(ii), which requires a privilege log to "describe the nature of the documents, communications, or tangible things not

produced or disclosed—and do so in a manner that, *without revealing information itself privileged or protected, will enable other parties to assess the claim*." (emphasis supplied).

Making an *in camera* inspection of the challenged documents is the well-established procedure under Illinois law to further evaluate privilege claims beyond what is asserted in a privilege log (and is the vehicle Magistrate Judge Frazier used at the outset of this case to affirm the propriety of Allstate's privilege claims over documents randomly selected by plaintiffs from Allstate's privilege log). For example, in *United States v. Board of Education of Chicago*, 610 F. Supp. 695, 701 (N.D. Ill. 1985), the court stated that an "*in camera* inspection is *appropriate* to make an *informed decision* as to whether the privilege applies at all." (emphasis supplied). In *Ferguson v. Lurie*, 139 F.R.D. 362, 364-65 (N.D. Ill. 1991), the court further explained that an *in camera* review is of paramount importance "because [when] such an important right is at issue, [the] Court will not base its decision solely on [its own] speculation." *Id*. (concluding *in camera* inspection was necessary of an allegedly privileged document); *see also Zitzka v. Village of Westmont*, No. 07 C 0949, 2009 WL 1346256, at *1 (N.D. Ill. May 13, 2009) (rejecting the plaintiff's request to order production of disputed documents without an *in camera* review, "prefer[ing] to make [its] ruling based on *actual review* of the documents") (emphasis supplied).

### E.     Magistrate Judge Frazier Both Misconstrued And Misapplied The Illinois Control Group Test.

Rather than relying on the ample case law from the Illinois Supreme Court and Illinois appellate courts addressing the attorney-client privilege and control group test that the parties cited, the Production Order cited exclusively a website discussion by a law firm representing Allstate. (Doc. 177 at 2). This article, of course, is of no persuasive value in light of the well-established Illinois jurisprudence presented by the parties. *Sears, Roebuck and Co. v. Royal Surplus Lines Ins. Co.*, No. 00 C 7084, 2001 WL 1467762, at *4 (N.D. Ill. Nov. 19, 2001) ("law review articles are not binding authority and the court cannot rely on them to make decisions

without precedential support"). Furthermore, Magistrate Judge Frazier relied on an incomplete statement of the purported legal standard from the attorney article and misstated the article's legal standard, which created additional error in the finding regarding Allstate's privilege claims.

The issue addressed by Magistrate Judge Frazier was whether Erin English qualifies as a member of a control group under Illinois law in connection with the customer complaint documents withheld by Allstate on the basis of the attorney-client privilege. As discussed above, this issue cannot be fairly evaluated under Illinois law without reference to one or more specific documents that have actually been withheld. (*See*, *supra*, Section III.C). Without even evaluating the unique facts and circumstances of a single document, Allstate made a proper showing that Ms. English is a member of a control group in connection with the customer complaint documents.

Magistrate Judge Frazier misconstrued the Illinois control group legal standard in finding that Allstate did not show English's "normal duties" include "advising top management." (Doc. 177 at 2). This is not the law. As the Illinois Supreme Court held, employees not in top management are within a control group if the company would consult them when soliciting legal advice in a particular area of expertise:

> We believe that an employee whose advisory role to top management in a particular area is such that a decision would not normally be made without his advice or opinion, and whose opinion in fact forms the basis of any final decision by those with actual authority, is properly within the control group. However, the individuals upon whom he may rely for supplying information are not members of the control group. Thus, if an employee of the status described is consulted for the purpose of determining what legal action the corporation will pursue, his communication is protected from disclosure. This approach, we think, better accommodates modern corporate realities and recognizes that decisionmaking within a corporation is a process rather than a final act.

*Consolidation Coal v. Bucyrus-Erie Co.*, 432 N.E.2d 250, 258 (Ill. 1982).

Accordingly, the test is not whether Ms. English's "normal duties" included advising "top management." Instead, the issue is whether top management would not normally make a decision in the particular area of responding to customer complaints related to the use of credit report information without Ms. English's advice or opinion. Allstate presented ample evidence that the company could not respond to the numerous customer complaints it received regarding the use of credit report information without seeking the specialized skills of Ms. English in this area. To that end, Allstate showed that:

- Since 2003, Ms. English has worked on Allstate's credit team, which is a small number of Allstate employees. (Doc. 147-1 at 5-6).

- The credit team seeks legal advice from Allstate's legal department on credit-related issues. (Doc. 147-1 at 15). The lawyers upon whom the credit team relies are identified on the face of Allstate's privilege log. For example, privileged document number APRIV 000817 identifies the following in-house lawyers at Allstate who were consulted by Ms. English regarding responding to a customer complaint: B. Lumicao, D. Sitz, S. Sheffey, A. Shimkus, and W. Boodro. (*See* Doc. 146-3 at 118-19).

- Since 2003, Ms. English has been the key person responsible for responding to customer complaints about Allstate's use of credit and its insurance scoring practices. (Doc. 147-1 at 3-4, 13-14). Certain of the complaints were directed to Allstate by regulatory authorities and numerous customers have sued Allstate over credit issues, including in this case. (*See* Doc. 70 ¶ 17).

- Ms. English has unique expertise to respond to customer complaints. (Doc. 147-1 at 13, 14, 17). For example, Ms. English testified that she is the *only* employee at Allstate to whom customer complaints related to insurance scoring are escalated:

    Q.   For all of Allstate's various companies and lines and policy types, there's one person in the country that deals with complaints that rise to a certain level that can't be handled by the first two layers of people, correct?

    A.   If they're related to insurance scoring, correct.

    Q.   If they're related to insurance scoring, they get to you?

    A.   Yes.

(*Id*. at 17).

That Ms. English possesses special expertise relied upon by Allstate to address specific credit-related issues is further demonstrated by the fact that she was Allstate's 30(b)(6) designee for topics relating to Allstate's calculation of insurance scores. (*See* Rule 30(b)(6) Notice of Deposition, Topics 9-12, Doc. 178-4). This is precisely what Ms. English was tasked with doing in connection with the customer complaints. Because a 30(b)(6) witness speaks for the company, it is illogical, and unsupported by the record evidence here, to conclude that the 30(b)(6) witness on a particular topic is so far removed from top management as to not fall within the control group on that specific topic. Magistrate Judge Frazier recognized this fact at the December 11, 2009 Discovery Dispute Conference. (Doc. 144 at 138-39).

Plaintiffs presented no evidence to controvert any aspect of Allstate's showing about Ms. English's role on the special team responding to customer complaints and her specialized skills that made her indispensable to the decisions Allstate had to make related to customer complaints about its use of credit scoring to price insurance policies.[4] Accordingly, absent evaluating any particular customer complaint document, including through an *in camera* inspection by the Court, Allstate made a proper showing to support its withholding of customer complaint documents that Ms. English issued or received.

## IV.  CONCLUSION

For the foregoing reasons, Allstate Insurance Company respectfully requests that the Court reverse Magistrate Judge Frazier's February 5, 2010 Order granting plaintiffs' motion to compel the production of documents withheld as subject to the attorney-client privilege, or, at a minimum clarify that the Order pertains only to documents identified on Document 178-2 that

---

[4] Allstate's privilege log also reflects that Allstate employee Dean Lamb was involved in customer complaint documents withheld on the basis of attorney-client privilege. (*See*, *e.g.*, Doc. 146-4 at 41, 242-51). Mr. Lamb has given deposition testimony in this case that establishes his senior corporate role in connection with credit scoring issues like the ones in the customer complaints. (*See*, *e.g.*, Doc. 178-1 at 5-6). Mr. Lamb should properly be considered as a member of "top management" in connection with the customer complaint documents.

were withheld solely on the basis of the attorney-client privilege and relate to customer complaints.  Allstate Insurance Company further requests that the Court stay the February 19, 2010 production deadline of privileged documents in the February 5, 2010 Order until the Court addresses this appeal.

Dated:  February 19, 2010

Respectfully submitted,

*/s/ Anne W. Mitchell*
Jeffrey Lennard - 1618059
*jlennard@sonnenschein.com*
John Grossbart - 3126133
*jgrossbart@sonnenschein.com*
M. Keith Moskowitz - 6274101
*mmoskowitz@sonnenschein.com*
Anne W. Mitchell - 6278050
*amitchell@sonnenschein.com*
SONNENSCHEIN NATH & ROSENTHAL LLP
7800 Sears Tower, 233 S. Wacker Drive
Chicago, Illinois 60606
(312) 876-8000

Troy A. Bozarth – 06236748
*troy.bozarth@heplerbroom.com*
HEPLER, BROOM, MacDONALD,
HEBRANK, TRUE & NOCE LLC
103 W. Vandalia St., Suite 300, POB 510
Edwardsville, Illinois 62025-0510
(618) 656-0184

ATTORNEYS FOR DEFENDANT
ALLSTATE INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2010 a copy of the foregoing

**ALLSTATE INSURANCE COMPANY'S RULE 72 OBJECTION
TO MAGISTRATE JUDGE FRAZIER'S GRANT OF PLAINTIFFS'
MOTION TO COMPEL PRODUCTION OF PRIVILEGED DOCUMENTS**

was filed electronically.  Notice of this filing will be sent to all counsel of record by operation of

the Court's electronic filing system.  Parties may access this filing through the Court's system.


                                                                        */s/ Anne W. Mitchell*