## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ROBERT L. JOHNSON, Sr., ANTHONY L. RICHARDSON, LARSINE ADAMS, ANNA ANDERSON, LONZIE L. AUTRY, BHAGAVAN BALAJI, JAMES BOLEN, ISHMAEL BROWN, Sr., MARILYN BUTLER, JACK CALDERONE, ALLISON CONTRADS, DONITA DALE, LONNIE GRIFFIN, WILLIE HOLMAN, ROY HYMAN, WILBON JOHNSON, MICHAEL J. KOZICKI, LEWIS LANGSTON, JERRY L. NELSON, TRINA PERKINS, GLORIA SMITH, LARRY STEIER, and THEODORE WOLLEYDT,** individually, and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **Cause No: 3:07-cv-00781-MJR-PMF**<br><br>**CLASS ACTION** |
| **Plaintiffs,** | ) ) ) | |
| **vs.** | ) ) | |
| **ALLSTATE INSURANCE COMPANY,** | ) ) ) | |
| **Defendant.** | ) ) | |

---

## FIRST AMENDED COMPLAINT

---

COME NOW Plaintiffs, individually, and on behalf of all others similarly situated**,** by and through their undersigned counsel, on information and belief, and for their First Amended Complaint against Defendant ALLSTATE INSURANCE COMPANY state as follows:

1.     State law and universal actuarial principles mandate that insurers treat similar risks alike and different risks differently.  Indeed, this is the fundamental concept underlying what is commonly referred to in insurance parlance as "fair discrimination."

2.      Unfair discrimination in premiums, rates, or fees, on the other hand, is prohibited. Unfair discrimination is the practice of charging different premiums, policy fees, or rates to individuals with similar insurance risk.

3.      In other words, state law prohibits insurers from charging two people residing in the same sate and buying the same insurance from the same company, different insurance rates unless such difference can be actuarially justified.

4.      As part of its rating system, Defendant currently utilizes – and has in the past utilized – credit scoring algorithms to calculate insurance premiums. However, Defendant utilizes multiple algorithms that produce vastly different results.

5.      As a result, policyholders with similar expected loss costs who bought the same insurance were charged different premiums based solely on the date the policyholder began their coverage with Defendant and its affiliated companies.

6.      This practice not only violates state law but has caused measurable economic damages to an ascertainable class.  This suit seeks to recover those damages.

**PARTIES, JURISDICTION AND VENUE**

7.      Larsine Adams is a natural person and citizen and resident of the state of  Illinois who purchased Allstate insurance for coverage in Illinois.

8.      Anna Anderson is a natural person and citizen and resident of the state of Arizona who purchased Allstate insurance for coverage in Washington.

9.      Lonzie L. Autrey, Jr.  is a natural person and citizen and resident of the state of Illinois who purchased Allstate insurance for coverage in Illinois.

10.      Bhagavan Balaji is a natural person and citizen and resident of the state of New York who purchased Allstate insurance for coverage in New York.

11.     James Bolen is a natural person and citizen and resident of the state of Tennessee who purchased Allstate insurance for coverage in Illinois and Tennessee.

12.     Ishmael Brown Sr. is a natural person and citizen and resident of the state of South Carolina who purchased Allstate insurance for coverage in South Carolina.

13.     Marilyn Butler is a natural person and citizen and resident of the state of Washington who purchased Allstate insurance for coverage in Washington.

14.     Jack Calderone is a natural person and citizen and resident of the state of North Carolina who purchased Allstate insurance for coverage in North Carolina.

15.     Allison Conrads is a natural person and citizen and resident of the state of New Jersey who purchased Allstate insurance for coverage in the state of New Jersey.

16.     Donita Dale is a natural person and citizen and resident of the state of Illinois who purchased Allstate insurance for coverage in Illinois.

17.     Lonnie Griffin is a natural person and citizen and resident of the state of Illinois who purchased Allstate insurance for coverage in Illinois.

18.     Willie Holman is a natural person and citizen and resident of the state of South Carolina who purchased Allstate insurance for coverage in South Carolina.

19.     Roy Hyman is a natural person and citizen and resident of the state of New York who purchased Allstate insurance for coverage in New York.

20.     Robert Johnson is a natural person and citizen and resident of the Southern District of Illinois who purchased Allstate insurance for coverage in Illinois.

21.     Wilbon Johnson is a natural person and citizen and resident of the state of Illinois who purchased Allstate insurance for coverage in Illinois.

22.     Michael J. Kozicki is a natural person and citizen and resident of the state of Michigan who purchased Allstate insurance for coverage in the state of Illinois and Michigan.

23.     Lewis Langston is a natural person and citizen and resident of the state of North Carolina who purchased Allstate insurance for coverage in North Carolina.

24.     Jerry L. Nelson is a natural person and citizen and resident of the Southern District of Illinois who purchased Allstate insurance for coverage in the state of Illinois.

25.     Trina Perkins is a natural person and citizen and resident of the state of  Illinois who purchased Allstate insurance for coverage in Illinois.

26.     Anthony Richardson is a natural person and citizen and resident of the Southern District of Illinois who purchased Allstate insurance for coverage in Illinois.

27.     Gloria Smith is a natural person and citizen and resident of the state of Georgia who purchased Allstate insurance for coverage in Georgia and Alabama.

28.     Larry Steier is a natural person and citizen and resident of the state of Nebraska who purchased Allstate insurance for coverage in Nebraska.

29.     Theodore Wolleydt is a natural person and citizen and resident of the state of Arizona who purchased Allstate insurance for coverage in the state of Arizona.

30.     All references to "Plaintiff(s)" throughout this Complaint are made on behalf of the named Plaintiffs and the Class, and vice versa.

31.     Defendant is and has at all times relevant to this Complaint been a citizen of Illinois as it is an Illinois insurance company with its principal place of business in Illinois.

32.     The amount in controversy in this action, as defined by 28 U.S.C. § 1332(d)(6), exceeds $5,000,000 exclusive of costs and interest.

33.     <u>Defendant</u> is a resident of the Southern District of Illinois as it is has ongoing and systematic contacts with residents of the Southern District of Illinois.  <u>Defendant</u> has, at all material times, conducted business, including the sale of insurance to residents of the U.S. in the Southern District of Illinois.  Moreover, <u>Defendant</u> has sufficient minimum contacts with the State of Illinois such that the assumption of jurisdiction will not offend traditional notions of fair play and substantial justice.

34.     <u>Defendant sells private passenger automobile, homeowners', motorcycle, and renters' insurance directly or through one of its subsidiaries such as Allstate Fire & Casualty Insurance Co., Allstate Indemnity Insurance Co., Allstate Floridian Indemnity Co., Allstate Insurance Co., Allstate New Jersey Insurance Co., Allstate New Jersey Property & Casualty Insurance Co., and Allstate Property & Casualty Insurance Co. ("Allstate Entities").</u>

35.     Defendant performs, and at all times relevant herein has performed, all underwriting, rating and credit scoring for each private passenger automobile, homeowners', motorcycle, and renters' insurance policy that is written in the United States by any of the Allstate <u>E</u>ntities at its headquarters in Illinois.

36.     Defendant's Illinois-based actuaries created the proprietary credit scoring algorithms and methodologies that it employs, and at all times relevant herein has employed, at its Illinois headquarters to provide underwriting, rating and credit scoring for each private passenger automobile, homeowners', motorcycle, and renters' policy that is written in the United States by any of the Allstate Entities. <u>Access to these algorithms was limited to only a select number of Allstate Insurance Co. employees working in its Research and Development Center in Illinois.</u>

37.     Defendant's actuarial employees located at its Research and Development Center in Illinois created a series of uniform insurance scoring algorithms that were applied nationwide to each private passenger automobile, homeowners', motorcycle, and renters' policy that was written in the United States by any of the Allstate Entities.

38.     Defendant's employees located in Illinois determined when these algorithms were implemented and Allstate and its entities would simultaneously use multiple algorithms within the same company and line of insurance.

39.     Defendant's actuarial employees located at its Research and Development Center in Illinois established uniform insurance scoring breakpoints that were applied in a uniform fashion nationwide to segregate its insureds.

40.     Defendant maintains – at its headquarters in Illinois – the files and records of contracts of insurance for each private passenger automobile, homeowners', motorcycle, and renters' policy that is written in the United States by any of the Allstate Entities.  For example, each of the Allstate Entities that sell homeowners' and/or private passenger automobile insurance in Florida maintains Illinois addresses for (1) administrative; (2) home; (3) mailing; (4) policy holder relations; and (5) location of records.

41.     Pursuant to 215 ILCS 5/121(2)(b), "maintaining files or records of contracts of insurance" in Illinois is "deemed to constitute transacting insurance business in" Illinois.

42.     When reference in this Complaint is made to any act or omission of Defendant, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of Defendant committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction,

operation, or control of the affairs of Defendant, and did so while acting within the scope of their employment or agency.

## STATEMENT OF FACTS

43.     Defendant sells private passenger automobile, homeowners', motorcycle, and renters' insurance nationwide either directly or through one of various Allstate Entities.  These policies are sold nationwide under the service mark "Allstate."

44.     Plaintiffs are some of the <u>individuals</u> insured by Allstate who paid all premiums and other charges due and owing under their policies.

45.     <u>State</u> law mandates that insurers treat similar risks alike and different risks differently.  Indeed, this is the fundamental concept underlying what is commonly referred to in insurance parlance as "fair discrimination."

46.     Unfair discrimination in premiums, rates, or fees, on the other hand, is prohibited.  Unfair discrimination is the practice of charging different premiums, policy fees, or rates to individuals with similar insurance risk.

47.     Defendant performed, and at all times relevant herein has performed, all underwriting, rating and credit scoring for each private passenger automobile, homeowners', motorcycle, and renters' policy that is written in the United States by any of the Allstate entities at its headquarters in Illinois.  Defendant, in so doing, determines the price of insurance for all of its customers as well as all customers of each of the Allstate Entities.

48.     To determine the price of insurance for each insured, Defendant's Illinois-based actuaries created proprietary credit scoring algorithms and methodologies.

49.    <u>Defendant</u> currently utilizes – and has in the past utilized – multiple formulas to calculate insurance premiums.  As a result, policyholders with identical risks can have different insurance scores and consequently different premiums.

50.    <u>Plaintiff Robert Johnson and his wife purchased an Illinois homeowners policy from Allstate Indemnity Company in April 2005.  To determine the premium for the policy, Allstate Insurance Co. used its IFSp algorithm to calculate the Johnsons' insurance score. The score as calculated under the IFSp algorithm resulted in the Johnsons placement into Rating Group (Tier) 6C.</u>

51.    <u>At the same time, other Allstate Indemnity Company customers had their Illinois homeowners' premiums calculated using insurance scores generated by the IFS algorithm.  Had the Johnsons been scored using the IFS algorithm, their insurance score would have been lower, thus placing them into Rating Group (Tier) 6B, which would have resulted in the calculation and charge of a premium $115 less than the annual premium actually charged.</u>

52.    Plaintiff Robert Johnson purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes <u>or the unfairly discriminatory effect their use had on the premiums paid by him</u>.

53.    Plaintiff Anthony Richardson purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes <u>or the unfairly discriminatory effect their use had on the premiums paid by him</u>.

54.    <u>Plaintiff Larsine Adams purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes or the unfairly discriminatory effect their use had on the premiums paid by her</u>.

55.     Plaintiff Anna Anderson purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes or the unfairly discriminatory effect their use had on the premiums paid by her.

56.     Plaintiff Lonzie L. Autrey, Jr purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes or the unfairly discriminatory effect their use had on the premiums paid by her.

57.     Plaintiff Bhagavan Balaji purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes or the unfairly discriminatory effect their use had on the premiums paid by him.

58.     Plaintiff James Bolen purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes or the unfairly discriminatory effect their use had on the premiums paid by him.

59.     Plaintiff Ishmael Brown Sr. purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes or the unfairly discriminatory effect their use had on the premiums paid by him.

60.     Plaintiff Marilyn Butler purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes or the unfairly discriminatory effect their use had on the premiums paid by him.

61.     Plaintiff Jack Calderone purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes or the unfairly discriminatory effect their use had on the premiums paid by him.

62.     Plaintiff Allison Conrads purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes or the unfairly discriminatory effect their use had on the premiums paid by him.

63.     Plaintiff Donita Dale purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes or the unfairly discriminatory effect their use had on the premiums paid by her.

64.     Plaintiff Lonnie Griffin purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes or the unfairly discriminatory effect their use had on the premiums paid by him.

65.     Plaintiff Willie Holman purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes or the unfairly discriminatory effect their use had on the premiums paid by him.

66.     Plaintiff Roy Hyman purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes or the unfairly discriminatory effect their use had on the premiums paid by him.

67.     Plaintiff Wilbon Johnson purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes or the unfairly discriminatory effect their use had on the premiums paid by him.

68.     Plaintiff Michael J. Kozicki purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes or the unfairly discriminatory effect their use had on the premiums paid by him.

69.     <u>Plaintiff Lewis Langston purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes or the unfairly discriminatory effect their use had on the premiums paid by him.</u>

70.     <u>Plaintiff Jerry L. Nelson purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes or the unfairly discriminatory effect their use had on the premiums paid by him.</u>

71.     <u>Plaintiff Trina Perkins purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes or the unfairly discriminatory effect their use had on the premiums paid by her.</u>

72.     <u>Plaintiff Gloria Smith purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes or the unfairly discriminatory effect their use had on the premiums paid by her.</u>

73.     <u>Plaintiff Larry Steier purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes or the unfairly discriminatory effect their use had on the premiums paid by him.</u>

74.     <u>Plaintiff Theodore Wolleydt purchased Allstate insurance without knowledge of Allstate's simultaneous use of multiple and differing insurance scoring schemes or the unfairly discriminatory effect their use had on the premiums paid by him.</u>

75.     Through the simultaneous use of multiple and differing insurance scoring schemes, Defendant has continuously and systematically engaged in an unlawful pattern and practice of unfair discrimination against consumers nationwide in the determination of premiums, policy pricing, and/or availability of insurance.  The use of multiple and differing insurance scoring schemes is not based on sound actuarial principles.  Nevertheless, Defendant

11

has used multiple and differing insurance scoring schemes as a basis for charging varying premiums to its insureds with similar insurance risk.

76.     <u>Plaintiffs were damaged as a result of Defendant's practices in that they paid more in insurance premiums than others with the same risk</u>.

77.     Plaintiffs and Class Members, as defined below, were unaware of Defendant's wrongful conduct, and unable to discover it until 2006.

## CLASS ACTION ALLEGATIONS

78.     This action is brought as a class action by Plaintiffs on behalf of themselves and on behalf of all those similarly situated pursuant to Rule 23(a) and 23(b)(1), (2), and (3) of the Federal Rules of Civil Procedure.  The proposed class is defined as follows:

> All United States residents <u>(</u>1) who are shown as a named insured on the declarations page of a private passenger automobile, homeowners', motorcycle, and/or renters' insurance' policy, <u>(</u>2) that was issued or renewed <u>by Allstate Insurance Co.,</u> Allstate Fire & Casualty Insurance Co., Allstate Indemnity Insurance Co., Allstate Floridian Indemnity Co., Allstate Insurance Co., Allstate New Jersey Insurance Co., Allstate New Jersey Property & Casualty Insurance Co., and Allstate Property & Casualty Insurance Co. from August 1, 1999 through September 15, 2007, <u>(</u>3) for which the premium was calculated based in part on an insurance scoring algorithm <u>(</u>4) who, as a result of the use of such algorithm, was at any time assigned a credit tier rating other than the most favorable credit tier <u>and (5) whose premium calculated under such algorithm was higher than if the insured's premium was calculated under another algorithm also in effect in the same state, company and line.</u> (the "Class" or "Class Members").
>
> Specifically excluded from the class are: <u>individuals</u> whose residence at the time the declaration page was issued was in Texas; any Judge conducting proceedings in this action and their parents, spouses and children as well as any other member of their family residing in the judge's household; counsel of record in this action; the legal representatives, heirs, successors and assigns of any excluded person.

79.     The exact number of <u>the</u> members <u>of the class (or sub-classes)</u> is not presently

known, but is so numerous that joinder of individual members in this action is impracticable. The exact number of the members of the class (or sub-classes) can only be ascertained through discovery, because such information is in the exclusive control of Defendant.  However, based on the nature of the activities alleged herein, Plaintiffs believe that the members of the class (or sub-classes) number at least in the hundreds of thousands and are geographically dispersed throughout the United States.  The names and addresses of the members of the class (or sub-classes) are readily obtainable from the Defendant and its agents and on information and belief are maintained in the computer database of Defendant and are easily retrievable.

80.     Plaintiffs will fairly and adequately protect the interests of the class (or sub-classes) and have retained counsel that are experienced and capable in class action litigation, and in the fields of insurance and consumer law.   Plaintiffs understand and appreciate their duties to the class (or sub-classes) under Fed. R. Civ. P. 23 and are committed to vigorously protecting the rights of absent members of the class (or sub-classes).

81.     Plaintiffs are asserting claims that are typical of the claims of each member of the class (or sub-classes) they seek to represent, in that the claims of all members of the class (or sub-classes), including Plaintiffs, depend upon a showing that the Defendant engaged in unfair acts or practices.  All claims alleged on behalf of the class (or sub-classes) flow from this conduct as well.   Further, there is no conflict between any Plaintiff and other members of the class (or sub-classes) with respect to this action.

82.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  Questions of law and fact arising out of Defendant's conduct are common to all members of the class (or sub-classes), and such common issues of law and fact predominate over any questions affecting only individual members of the

class (or sub-classes).

83.     Common issues of law and fact include, but are not limited to, the following:

a.      Whether Defendant's acts or practices constitute unfair discrimination;

b.      Whether Defendant's acts or practices constitute an unfair or deceptive act or practice within the meaning of state law;

c.      Whether Defendant's acts or practices violate state insurance and/or consumer protection law;

d.      Whether Plaintiffs and the members of the class (or sub-classes) have sustained damages and the proper measure of such damages; and

e.      Whether Plaintiffs and the members of the class (or sub-classes) are entitled to punitive damages and/or civil penalties.

84.     The relief sought is common to the entirety of the class (or sub-classes).

85.     Defendant has acted on grounds generally applicable to the class (or sub-classes), thereby making final injunctive relief or corresponding injunctive relief appropriate with respect to the class (or sub-classes) as a whole.

86.     This action is properly maintained as a class action in that the prosecution of separate actions by individual members would create a risk of adjudication with respect to individual members which would establish incompatible standards of conduct for the Defendant.

87.     This action is properly maintained as a class action in that the prosecution of separate actions by individual members of the class (or sub-classes) would create a risk of adjudications with respect to individual members of each class (or sub-classes) which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication, or would substantially impair or impede their ability to protect their interests.

88.     A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein given that, among other things:

14

(i)     significant economies of time, effort, and expense will inure to the benefit of the Court and the parties in litigating the common issues on a class-wide instead of a repetitive individual basis;

(ii)    the size of <u>the</u> individual <u>damages claims of most members of the class (or sub-classes)</u> is too small to make individual litigation an economically viable alternative, such that few members <u>of the class (or sub-classes)</u> have any interest in individually controlling the prosecution of a separate action;

(iii)   without the representation provided by Plaintiffs herein, few, if any, members <u>of the class (or sub-classes)</u> will receive legal representation or redress for their injuries;

(iv)    class treatment is required for optimal deterrence;

(v)     despite the relatively small size of <u>the claims of</u> many individual <u>members of the class (or sub-classes),</u> their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost effective basis, especially when compared with repetitive individual litigation;

(vi)    no unusual difficulties are likely to be encountered in the management of this class action;

(vii)   plaintiffs and <u>the</u> members <u>of the class (or sub-classes)</u> have all suffered irreparable harm and damages as a result of Defendant's unlawful and wrongful conduct;

(viii)  absent a class action, Defendant will likely retain millions of dollars received as a result of its wrongdoing, and its illegal, unfair, false and misleading conduct shall go unremedied and uncorrected; and

(ix)    absent a class action, the members <u>of the class (or sub-classes)</u> will not receive restitution, will continue to suffer losses, and Defendant will be allowed to retain the proceeds of its ill-gotten gains.

89.    Concentrating this litigation in one forum would aid judicial economy and efficiency, promote parity among the claims of <u>the</u> individual <u>members of the class (or sub-classes),</u> and result in judicial consistency.

## COUNT I

90.     Plaintiffs incorporate the allegations contained in Paragraphs 1 through 89 as if fully set out herein.

91.     At all times relevant hereto, Plaintiffs, Class Members, and Defendant were either natural persons or their legal representatives, partnerships, corporations, companies, trusts, business entities, or associations.

92.     Plaintiffs and Class Members purchased the insurance at issue herein for their use or that of members of their households.

93.     At all times material hereto, Defendant engaged in the advertising, offering for sale, sale, and/or distribution of services.

94.     State law prohibits Allstate from unfairly discriminating among its customers in the underwriting and pricing of insurance. *See, e.g.*, 44 C.J.S. Insurance § 94 ("Insurance rates may not be unreasonable, excessive, inadequate, or unfairly discriminatory."); Arizona, A.R.S. § 20-448. ("… a person shall not make or permit any unfair discrimination in favor of particular persons or between insureds or subjects of insurance having substantially like insuring, risk and exposure factors, or expense elements, in the terms or conditions of any insurance contract, or in the rate or amount of premium charged."); Connecticut, C.G.S.A. § 38a-686 ("Rates shall not be excessive, inadequate or unfairly discriminatory."); Georgia, Ga. Code Ann., § 33-6-4 (b) ("The following acts or practices are deemed unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:  (8)(A)(ii)  Making or permitting any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium, policy fees, or rates charged …."); Illinois, 215 ILCS 5/364 ("Discrimination between individuals of the same class of risk . . . in the amount of premiums or rates charged for

any insurance covered by this article . . . is prohibited."); 50 Ill. Admin. Code § 906.10 ("The effect of the Illinois Law is to require that all fire, casualty, inland marine or surety insureds of the same class shall be treated alike."); New Jersey, N.J.S.A. § 17:29A-4 ("…every insurer which makes its own rates, shall make rates … which do not unfairly discriminate between risks in this State involving essentially the same hazards and expense elements, and shall, in rate-making, and in making rating systems ...."); N.J.S.A. § 17:22-6.14a1 ("All property and casualty insurers doing business in New Jersey shall … file … their current underwriting guidelines…. Such guidelines, amendments or modifications shall not be arbitrary, capricious or unfairly discriminatory."); New York, N.Y. Ins. Law § 2303("[r]ates shall not be excessive, inadequate, unfairly discriminatory, destructive of competition …"  ); North Carolina, N.C.G.S.A. § 58-3-120. ("Discrimination between individuals of the same class in the amount of premiums or rates charged for any policy of insurance … is prohibited."); South Carolina, Code 1976 § 38-55-50 ("An insurer… may not make or permit any discrimination in favor of individuals between insureds of the same class and risk involving the same hazards in the amount of the payment of premiums or rates charged for policies of insurance …"); Tennessee, T. C. A. § 56-8-104 (7)(C) ("Making or permitting any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium, policy fees or rates charged for any accident or health insurance policy or in the benefits payable under any accident or health insurance policy, or in any of the terms or conditions of the policy, or in any other manner."); Washington, WA ST 48.18.480. ("No insurer shall make or permit any unfair discrimination between insureds or subjects of insurance having substantially like insuring, risk, and exposure factors, and expense elements, … in the rate or amount of premium charged therefor, ….").

95.     Through the simultaneous use of multiple and differing insurance scoring schemes, Defendant has continuously and systematically engaged in an unlawful pattern and practice of unfair discrimination against consumers in the determination of premiums, policy pricing, and/or availability of insurance.

96.     Defendant engaged in such unlawful course of conduct with the intent to induce Plaintiffs and Class Members to purchase private passenger automobile, homeowners', motorcycle, and/or renters' insurance and pay premiums above those charged to other Allstate insureds with similar insurance risk.

97.     Defendant's acts or practices were "unfair" as they offend public policy, are immoral, unethical, oppressive, or unscrupulous, and/or cause substantial injury to consumers.

98.     Defendant's acts or practices offend the clearly stated public policy prohibiting discrimination in the making and selling of insurance as set forth in <u>State law</u>.

99.     <u>Defendant's past dealings with State Departments of Insurance show clearly that Defendant's practices offend public policy. For example, in March, 2000, the Illinois Department of Insurance and Defendant entered into a Stipulation and Consent Order with respect to Private Passenger Automobile Insurance, which stated, in pertinent part:</u>

> <u>the Director has reason to believe that the Revised Plan implements an unfair or deceptive act or practice .. because…**existing policyholders are treated differently than new policyholders based upon a factor or element other than a difference in risk characteristics**;</u>

> <u>*   *   *   *</u>

> <u>Allstate or Allstate Property and Casualty Insurance Company **shall not submit a new rating plan that … treats policyholders differently based upon a factor or element other than a difference in risk characteristic.**</u>

<u>(Doc. 162-1 (emphasis added). *See also*, Doc. 148-3 and 148-4).</u>

18

100.    Defendant's acts or practices are immoral and unethical as they serve only to benefit Defendant to the detriment of the consuming public.

101.    Defendant's practices are unethical in that they violate the standards governing all actuaries in the United States.

102.    The Casualty Actuarial Society (CAS) Ratemaking Principle 4, states that:

> A rate is reasonable, not excessive, or unfairly discriminatory if it is an actuarially sound estimate of the expected value of all future costs associated with an individual risk transfer.

103.    Plaintiffs' allegations that Defendant unfairly discriminated among its customers without disclosing these facts runs afoul of these actuarial principles and is therefore unethical.

104.    Defendant's acts or practices were likely to cause, and did cause, substantial injury to consumers.

105.    As a result of its simultaneous use of multiple and differing insurance scoring schemes, Defendant has unfairly discriminated against Plaintiffs in the determination of premiums, policy pricing, and/or availability of insurance and as a result, Plaintiffs have paid premiums in excess of those paid by other insureds with similar expected loss costs.

106.    These acts resulted in Defendant receiving millions of dollars in revenue as a result of its illegal activities.

107.    The injuries caused by Defendant's acts or practices, namely consumers' monetary losses, are not outweighed by any countervailing benefit to consumers or competition. Defendant's unfair acts served no purpose other than to increase its own profits.

108.    These injuries were not reasonably avoidable.  Because Defendant was the sole source of material information and did not disclose such information to its customers, consumers could not have had reason to anticipate the impending harm and thus avoided their injuries.

109.    Defendant knew that its implementation of <u>multiple and differing insurance</u> scoring <u>algorithms</u> was not based on sound actuarial principles.

110.    Defendant knew that, through the simultaneous use of multiple and differing <u>insurance</u> scoring schemes, it was charging varying premiums to insureds with similar insurance risk.

111.    The unfair acts and/or practices of the Defendant alleged herein occurred in connection with Defendant's conduct of trade and commerce in Illinois.  Specifically, the unfair acts and/or practices of the Defendant alleged herein were performed and undertaken entirely in Illinois.

112.    In fact, all of the circumstances that make up the fraudulent transaction occur within Illinois, and all that <u>occurs</u> out-of-state is <u>some class members' payments of premium</u>.

113.    Defendant intended for Plaintiffs and Class Members to purchase automobile, homeowners', <u>renters and motorcycle</u> insurance coverage in reliance on Defendant's unfair acts and/or practices.

114.    As a direct and proximate result of the unfair acts or practices of the Defendant, Plaintiffs and Class Members were damaged in that <u>they</u> paid higher premiums than those charged to other Allstate insureds with similar insurance risk.

WHEREFORE, Plaintiffs and the Class pray that the Court enter judgment in their favor and against Defendant as follows:

    a.   Ordering that this action be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and

    b.   <u>Declaring</u>:
       1)   <u>Defendant's simultaneous use of multiple and differing insurance scoring schemes results in an unlawful unfair discrimination against its customers; and</u>

2) <u>Defendant's unlawful unfair discrimination constitutes an Illegal act or practice within the meaning of State law</u>;

c. Awarding Plaintiffs and Class Members compensatory damages, pre- <u>and post</u>-judgment interest, costs of suit, and attorneys' fees.

**KOREIN TILLERY**

<u>/s Aaron M. Zigler</u>
Stephen M. Tillery
Aaron M. Zigler
One U.S. Bank Plaza
505 N. 7th Street, Suite 3600
St. Louis, Missouri  63101-1625
Telephone:      (314) 241-4844
Facsimile:       (314) 450-4138
stillery@koreintillery.com
azigler@koreintillery.com

***Attorneys for Plaintiffs***

Of counsel:

**LAW OFFICES OF WALT D. ROPER, P.C.**
Walt D. Roper
3100 Monticello Avenue, Suite 500
Dallas, Texas 75205
Telephone:      (972) 755-2525
Facsimile:       (214) 378-6670

**BECK, REDDEN & SECREST, L.L.P.**
W. Curt Webb
David W. Jones
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone:      (713) 951-3700
Facsimile:       (713) 951-3720

**CROWLEY NORMAN, L.L.P.**
R. Martin Weber, Jr.
Three Riverway, Suite 1775
Houston, Texas 77056
Telephone:      (713) 651-1771
Facsimile:       (713) 651-1775

**PAYNE MITCHELL LAW GROUP**
James L. Mitchell
2911 Turtle Creek Boulevard
Dallas, Texas 75219
Telephone:     (214) 252-1888
Facsimile:      (214) 252-1889

**MITHOFF LAW FIRM**
David H. Burrow
One Allen Center
500 Dallas St., Ste. 3450
Houston, Texas 77002
Telephone:     (713) 222-6333
Facsimile:      (713) 650-6333

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ROBERT JOHNSON, ANTHONY RICHARDSON, SHEILA SYDNOR, and DEBORAH SPARKS, individually, and on behalf of all others similarly situated,** | ) ) ) ) | |
| | ) | **Cause No: 3:07-cv-00781-MJR-PMF** |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CLASS ACTION** |
| | ) | |
| **ALLSTATE INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- Troy A. Bozarth
- John I. Grossbart
- Jeffrey Lennard
- Anne W. Mitchell
- M. Keith Moskowitz
- Walt D. Roper
- Jill R. Sundberg
- Stephen M. Tillery
- R. Martin Weber, Jr.
- Anders C. Wick

   /s Aaron M. Zigler
Aaron M. Zigler
KOREIN TILLERY
One U.S. Bank Plaza
505 N. 7th Street, Suite 3600
St. Louis, MO 63101
Tel: (314) 241-4844
Fax: (314) 450-4138
azigler@koreintillery.com
Attorney for Plaintiffs