# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ROBERT L. JOHNSON, SR., et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 07-CV-0781-MJR-PMF** |
| | ) | |
| **ALLSTATE INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

This putative class action based on Illinois' Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 Ill. Comp. Stat. 505/1–12 (2008), originally involved only four class representatives, all residents of Illinois. The four representatives were whittled down to two after two of them failed to demonstrate their standing to bring their own suits (Doc. 124). Later, counsel for Plaintiffs moved to amend the complaint to add additional class representatives and additional classes for certification, all before the Court held the hearing on the original class certification motion. The Court considered the motion to amend at the class certification hearing and, after taking the matter under advisement, permitted the Plaintiffs to add the new plaintiffs and classes. (Doc. 191.)

The Court also noted that Allstate would have the same opportunity to challenge the new complaint as it did with the older one. Allstate accepted the Court's invitation, filing three motions asserting Rule 12 defenses. Two of them assert defenses that Allstate has tried before: that the Plaintiffs lack standing (Doc. 201) and that the Plaintiffs failed to state a claim (Doc. 205). This time, though, Allstate points out that eleven of the new plaintiffs have brought their suits in the wrong venue (Doc. 203). The Court will grant the venue motion, grant the standing motion in part and deny the motion for failure to state a claim.

**Motions to Amend and Strike**

Before getting to the substance of the motions, Allstate has two motions to amend its briefs and exhibits due to information discovered to be inaccurate after the filing of the motion (Docs. 207, 208). The Court will grant these motions. There is no need to file the amended briefs and exhibits separately because the briefs are already on file (*e.g.*, Doc. 207-1) and the Plaintiffs received them as well.

The Plaintiffs have also filed a motion to strike Allstate's argument that § 906.10 of Title 50 of the Illinois Administrative Code was repealed (Doc. 228). The Court will deny this motion because that issue is argument; whether § 906.10 is in fact repealed or not can be handled while deciding the motions without resort to a motion to strike.

**Venue**

The Court will proceed to the venue challenge first, as the factual matters makes this the easier threshold issue in this particular case. Although venue is technically not a jurisdictional issue, it is still not a decision on the merits, so the Court need not consider the subject-matter jurisdictional challenge first. Subject-matter jurisdiction "is vital only if the court proposes to issue a judgment on the merits." *In re LimitNone, LLC*, 551 F.3d 572, 577 (7th Cir. 2008) (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1191–92 (2007)). Federal courts have leeway "to choose among threshold grounds for denying audience to a case on the merits." *Id.* at 576 (quoting *Sinochem Int'l Co.*, 127 S. Ct. at 1191); s*ee also id.* at 576–77 (noting examples where other threshold issues were decided before subject-matter jurisdiction). There is "no reason to treat venue differently." *Id.* at 577. While *LimitNone* "should not be read to suggest that district courts may in every case decide venue in advance of subject-matter jurisdiction without due consideration of whether it is advisable to do so," *id.* at 578, it is advisable here where the parties do not dispute the relevant factual basis for venue.

Allstate's challenge to the newly-added plaintiffs concerns a subset that have forum-selection clauses in their policies. Because each of these clauses designates a forum different than the Court for any matters relating to the insurance policy (and monetary damages for an unfair insurance premium would be one of them), Allstate argues that the Court must dismiss them. The Court agrees. A defense based on a forum selection clause is a venue defense, so it is properly raised as a pre-answer 12(b)(3) motion and need not be raised as a motion to transfer. *See Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 760 (7th Cir. 2006). Although not challenged here, contractual forum selection clauses have a presumption of validity. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1977). "[T]he law is clear: where venue is specified with mandatory or obligatory language, the clause will be enforced; where jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive." *Paper Express Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992). A forum selection clause with mandatory, obligatory or exclusive language is enforced unless the provision was procured by fraud or overreaching or enforcement would be unreasonable. *Id.* In other words, the clause will be enforced unless its enforcement would be a "serious inconvenience." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 592 (1991).

The insurance policies of these plaintiffs provide that "any and all lawsuits in any way related to this policy shall be brought, heard, and decided only in a state or federal court located in" the state in which the policy was issued. The clauses specifically name the states, namely, Alabama (Smith), Arizona (Wolleydt), Georgia (Smith), Michigan (Kozicki), Nebraska (Steier), New Jersey (Conrads), New York (Balaji), South Carolina (Brown and Holman), Tennessee (Bolen) and Washington (Anderson and Butler). Because the phrase "shall be brought . . . only" is mandatory language, the forum selection clauses in their insurance policies are enforceable.

The Plaintiffs do not dispute any of this. What they dispute is that this motion could be brought at all. They argue that because the Southern District qualifies as a venue under § 1391, the only way to deal with a forum selection clause would be to transfer under § 1404(a). The Plaintiffs offer no authority demonstrating the denial of 12(b)(3) motions on this ground; all they do offer is authority discussing the § 1404(a) motions outside of a 12(b)(3) context. *E.g.*, *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27 (1988); *In re LimitNone, LLC*, 551 F.3d 572. All this demonstrates is that the Court should determine a request for a transfer based on § 1404(a), but no one asked for a transfer. In fact, the Plaintiffs argued against transfer. Allstate instead asked for a dismissal due to a forum selection clause, which it can do through established precedent. *E.g.*, *Muzumdar*, 438 F.3d at 760.

Unfortunately, the Plaintiffs focused their argument solely on these grounds, arguing that they cannot be dismissed and, if the Court were to reinterpret the motion as a transfer motion, that a transfer would be inappropriate; they never argued that the forum selection clause could not be enforced. These arguments against transfer, if well taken, could bear on whether dismissing the plaintiffs to re-file their action in their respective home states would be a "serious inconvenience," but the arguments only demonstrate that while it may be an "inconvenience," it is not a "serious inconvenience." For starters, they live in the fora in which the forum selection clauses require suit to be brought, which already reduces any inconvenience. The exception is Smith who has two insurance policies. One is for the state in which she lives (Alabama) and a second insurance policy indemnifies her in a nearby state (Georgia). Secondly, although some of the witnesses they seek do not live in their particular forum, they do not live in this forum either; they live in the Northern District. Third, their argument that an Illinois is best for bringing a case purportedly under Illinois law does not imply that Illinois is the only place a suit based on Illinois law could be brought or that their home states are gravely incompetent in interpreting Illinois law. "[A]bsent a showing that trial in the 'contractual forum will be so gravely difficult and inconvenient that [the party challenging the

4

clause] will for all practical purposes be deprived of his day in court . . . there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain.'" *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1291 (7th Cir. 1989) (citations omitted); *see Blades v. Monsanto Co.*, No. 00-CV-4034-DRH, 2001 WL 775980, at *2 (S.D. Ill. Jan. 3, 2001) (Herndon, J.) (absent a showing the parties will be deprived of their day in court, they "will be held to their bargain as contained in the forum selection clause"); *see also Wors v. Sling Medical, Inc.*, No. 10-cv-0106-MJR, 2010 WL 1963201, at *3 (S.D. Ill. May 14, 2010) (Reagan, J.) (citing *Heller Fin., Inc.*, 883 F.2d at 1291; *Blades*, 2001 WL 775980, at *2). The Plaintiffs' arguments do not demonstrate grave difficulty; the Court is confident that they can have their day in court in the states for which they bargained.

Once the Court has determined that the case must be dismissed based on a forum selection clause, the analysis normally turns to whether the case should be transferred to the fora specified in the clauses. *See, e.g.*, *Wors*, 2010 WL 1963201, at *3. The Court cannot make this inquiry at present; not only have the parties failed to move or argue that transfer is appropriate but also the Plaintiffs specifically argued that transfer was inappropriate. So the Court will not transfer; it will dismiss without prejudice.

### Subject-Matter Jurisdiction

Allstate challenges all but one of the Plaintiffs (Holman, who has already been dismissed) for lacking standing. Standing is a constitutional requirement for the Court's subject-matter jurisdiction. *See* U.S. Const. art. III, § 2. As a jurisdictional requirement, the plaintiffs bear the burden of establishing standing. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). "[G]eneral allegations of injury [are] usually sufficient to demonstrate standing at the pleading stage." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). That deference to the allegations changes when a defendant makes a factual challenge to subject-matter jurisdiction, meaning that it argues, not that the complaint insufficiently alleges subject-matter jurisdiction, but instead "that

there is *in fact* no subject matter jurisdiction." *Id.* at 444 (quoting *United Phosphorus, Ltd. v. Angus Chem. Co.*, 332 F.3d 942, 946 (7th Cir. 2003)). Once the defendant proffers evidence refuting a plaintiff's standing as alleged, "'[t]he presumption of correctness that we accord a complaint's allegations falls away,' and the plaintiff bears the burden of coming forward with competent proof that standing exists." *Id.* (alteration in original) (quoting *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2003)).

The elements of standing are "(1) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and (3) a likelihood that the injury will be redressed by a favorable decision." *Village of Riverdale v. 138th St. Joint Venture*, 527 F. Supp. 2d 760, 763 (N.D. Ill. 2007). Allstate has challenged the standing of the Plaintiffs before. The last time it came forward with proof that none of the putative class representatives had Allstate insurance, meaning that they lacked the first element of standing. Two of the four failed to rebut the lack of Allstate insurance, but the remaining two had Allstate insurance. This time, Allstate makes the same argument, presenting the deposition of Erin English that, according to Allstate's records, four of the new plaintiffs never bought Allstate insurance. This argument is contradictory for three of those plaintiffs; Allstate has presented their policies indicating that those individuals have insurance issued by an Allstate *subsidiary*. These three, though, have already been dismissed for improper venue (Anderson, Conrads and Wolleydt), so the issue for them is moot. The remaining plaintiff, Adams, fell into the Sydnor and Sparks trap and did not present evidence rebutting Allstate's assertion of lack of insurance. (*See* Doc. 219 at 5–7 (pointing out evidence for fourteen of the plaintiffs that they had Allstate insurance but Adams was not included).) Because of this, Adams will have to be dismissed for the same reason that Sydnor and Sparks were.

6

The Plaintiffs try to save these dismissals by arguing that, because Allstate did not challenge the standing of all of them, automatically its motion must fail. The Plaintiffs rely on recent case law for that proposition, *see Horne v. Flores*, 129 S. Ct. 2579 (2009); *Bond v. Utreras*, 585 F.3d 1061 (7th Cir. 2009), but those cases dealt with the standing of permissive interveners, *see Horne*, 129 S. Ct. at 2592–93; *Bond*, 585 F.3d at 1061. The Plaintiffs here are bringing claims in their own right so they need to establish their standing. *See Davis v. Fed. Election Comm'n*, 128 S. Ct. 2759, 2768–69 (2008) ("'[S]tanding is not dispensed in gross.' Rather, 'a plaintiff must demonstrate standing for each claim he seeks to press' and "'for each form of relief"' that is sought." (citations omitted) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006))).

Allstate has three other arguments directed at the Court's jurisdiction over the Plaintiffs, but all of them fail. Two of them—that Plaintiffs "lack standing" to assert ICFA claims because Allstate is not a seller and that Plaintiffs failed to make allegations sufficient to pierce the corporate veil of its subsidiaries that actually sold the insurance—are pleading arguments. Allstate wants them to be traceability arguments, but the threshold for traceability is low. To establish traceability, the plaintiff need only show "a causal connection between the injury and the conduct complained of." *Rawoof v. Texor Petrol. Co.*, 521 F.3d 750, 756 (7th Cir. 2008) (quoting *Lujan*, 504 U.S. at 560–61). "Article III requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Anthony v. Am. Airlines, Inc.*, No. 03 C 3681, 2006 WL 2794777, at *4 (N.D. Ill. Sept. 27, 2006) (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). Even though the subsidiaries were the ones that issued the policies, the Plaintiffs alleged that the rate discrimination took place at the Allstate level, not at the subsidiary level. (Am. Compl. ¶ 47.) Because of this allegation, at least on the question of subject-matter jurisdiction, it does not matter that Allstate is

not a "seller" or that there was no veil piercing allegations; the Plaintiffs' injuries can be traced to Allstate's alleged conduct.

The third argument that Allstate presents is that all of the Plaintiffs fall into one or more of three categories and each of the categories is grounds for lacking standing: (1) plaintiffs for which Allstate never acquired credit information; (2) plaintiffs that Allstate scored under only one algorithm, not "multiple" algorithms and (3) plaintiffs placed in the best credit rating. It is law of the case that these merits-based arguments are premature. (Doc. 124 at 6.) Nevertheless, Allstate argues that the Court should reconsider because the decisions upon which it relied dealt with facial challenges to standing, not factual challenges. It is true that *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750 (7th Cir. 2008), and *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), were facial challenges and *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, was a factual challenge. Those cases describe what must be alleged, which means they also indicate what evidence should be presented to start or defeat a factual challenge, and based on those cases (and others), Allstate is trying to impress upon the Plaintiffs a much larger jurisdictional burden than they have to bear. The Plaintiffs, at this stage, are not required "to establish a *meritorious* claim"; instead, they are to establish an "interest that the law protects when it is wrongfully invaded." *Aurora Loan Servs., Inc. v. Craddieth*, 442 F.3d 1018, 1024 (7th Cir. 2006). The Plaintiffs whose claims remain viable have done so here. They have Allstate or Allstate-subsidiary insurance. Allstate's conduct-in-fact with regards to the Plaintiffs allegations will properly come before the Court at a later date.

## Stating a Claim

Having resolved the threshold issues, the Court can turn to Allstate's final challenge, that the amended complaint should be dismissed for failure to state a claim upon which relief could be granted. Like subject-matter jurisdiction, Allstate has made this challenge before. (*See* Doc. 124 at 7–13.) Challenging a complaint on these grounds really means arguing that the complaint does not

conform with Rule 8 of the Federal Rules of Civil Procedure. *See Hallinan v. Fraternal Order of Police*, 570 F.3d 811, 820 (7th Cir.), *cert. denied*, 130 S. Ct. 749 (2009). Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "short and plain statement" does not require plaintiffs to organize their allegations into "multiple counts, each of which specifies a single statute or legal rule." *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). "To the contrary, the rules discourage it." *Id.*

The Seventh Circuit outlined the Supreme Court's requirements for surviving a 12(b)(6) motion in *Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009). The plaintiff's claim must be plausible—it must contain enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the allegations. *Id.* at 581 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Courts must accept factual allegations as true but should not accept conclusory legal statements as adequate. *Id.* (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–51 (2009)). While a defendant is only entitled to fair notice of what the claim is and the grounds upon which the claim rests, at some point a complaint may fail to provide such notice because its factual detail is "so sketchy." *Id.* (citing *Erickson v. Pardus*, 551 U.S. 89, 92 (2007)); *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

Allstate's first argument is that the Plaintiffs amended complaint fails the tests of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, in that Plaintiffs have not pleaded facts that would make their claim for relief based on the ICFA rise above the speculative level. This argument can be broken into two parts.

The first part of the ICFA argument is that the Plaintiffs have failed to demonstrate that Allstate is a "seller" within the meaning of the ICFA and have, save for Robert Johnson, failed to plead any damages. The Court has already addressed the argument with respect to damages.

(Doc. 124 at 10.) The Plaintiffs use the same sort of language for damages in the amended complaint as they did in the previous complaint, meaning that the Court need not revise its previous holding. The argument that Allstate is not a "seller" within the meaning of the act is new. However, § 2 of the ICFA does not use the term "seller"; that term appears in an opinion of an Illinois appellate court, which did not define who a seller is. *Totz v. Cont'l Du Page Acura*, 602 N.E.2d 1374, 1381 (Ill. App. Ct. 1992). The language used in the act (and in other case law) is the phrase "in the conduct of any trade or commerce." ICFA § 2, 815 Ill. Comp. Stat. 505/2; *accord Geschke v. Air Force Ass'n*, 425 F.3d 337, 344 (7th Cir. 2005) ("The elements of a claim under the ICFA are: (1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of conduct involving trade or commerce; (4) the plaintiff suffered actual damage; and (5) the damage was proximately caused by the deception." (citing *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002))). Allstate need not be a "seller" with respect to the Plaintiffs; all that is important is that Allstate's omission should have taken place "during a course of conduct involving trade or commerce." *Geshke*, 425 F.3d at 344. Allstate's argument, then, that it cannot be held liable under the ICFA because it did not sell the insurance policies at issue, simply does not matter.

The second part of the ICFA argument is that Allstate's conduct as alleged is not unfair because it does not violate public policy, meaning that the amended complaint does not state an ICFA "unfairness" claim. "The ICFA not only prohibits deceptive trade practices but also unfair practices." *Centerline Equip. Co. v. Banner Personnel Serv., Inc.*, No. 07 C 1611, 2009 WL 1607587, at *5 (N.D. Ill. June 9, 2009) (citing 815 Ill. Comp. Stat. 505/2). Courts have held the heightened pleading standard that applies to deceptive act claims need not apply when a plaintiff alleges an unfair practice claim. *Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 2224892, at *7 (N.D. Ill. May 27, 2008); *see also Thomas v. Arrow Fin. Servs., LLC*, No. 05 C 5699, 2006 WL 2438346, at *7 (N.D. Ill.

Aug. 17, 2006) (stating that "allegations of unfair acts under the ICFA do not need to comply with Rule 9"). "When determining what constitutes an unfair practice, the statute directs courts to give 'consideration . . . to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act ['FTCA']." *Centerline Equip. Co.*, 2009 WL 1607587, at *5 (alterations in original) (quoting 815 Ill. Comp. Stat. 505/2). The Illinois Supreme Court has adopted three factors for construing the FTCA. *Id.* The factors used to determine whether acts done by a defendant are enough to meet the unfair practices prong are: "'(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers.'" *Id.* (quoting *Robinson v. Toyota Motor Credit Co.*, 775 N.E.2d 951, 961 (Ill. 2002)). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 775 N.E.2d at 961 (quoting *Cheshire Mortgage Servs. Inc, v. Montes*, 612 A.2d 1130, 1143 (Conn. 1992)).

The Court has already held that § 906.10 of Title 50 of the Illinois Administrative Code and § 364 of the Illinois Insurance Code, 215 Ill. Comp. Stat. 5, indicate a public policy in Illinois against unfairly discriminatory insurance scoring. Allstate presented its current statutory interpretation argument in the original motion to dismiss and in its motion to reconsider the Court's ruling on the motion to dismiss. The Court sees no reason to reconsider this point yet again.

Allstate does offer a different argument that purportedly demonstrates a significant change in the law: that § 906.10 has been repealed, meaning that Illinois' public policy has changed and no longer prohibits the practice that Allstate has been accused of doing. *See Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988) (noting that "a controlling or significant change in the law" is an appropriate reason for reconsideration of a prior ruling (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983))). The problem with this

argument is that § 906.10 has not been repealed. The Illinois Administrative Procedure Act (IAPA), 5 Ill. Comp. Stat. 100 (2008), applies to the rules and procedures of the Illinois Department of Insurance. 215 Ill. Comp. Stat. 5/407.1 (2008). Before making, altering or amending a rule, the Department must comply with the procedures of the IAPA. *See* 5 Ill. Comp. Stat. 100/5-35(a) ("Before the adoption, amendment, or repeal of any rule, each agency shall accomplish the actions required by Section 5-40, 5-45, or 5-50, whichever is applicable."); *id.* § 5-35(b) ("No action by any agency to adopt, amend, or repeal a rule after this Act has become applicable to the agency shall be valid unless taken in compliance with this Section."). Unless the rulemaking is made in an emergency situation or is required by federal law, federal regulations, a court order or a collective bargaining agreement, the procedures outlined in § 5-40 of the IAPA apply. *See id.* § 5-40(a). Several steps have to be taken under the Act before the final certified copies of the rule can be submitted to the Secretary of State for the rulemaking to take effect. *See id.* § 5-40(a)–(c) (indicating the steps necessary to complete the provisions of the statute); *id.* § 5-40(d) (indicating that the final rulemaking becomes effective only when certified copies are filed with the Secretary of State after the conditions precedent are satisfied). Those steps have not been completed. Currently, the Illinois Department of Insurance has given initial notice that it *may* repeal § 906.10, but the actual repeal of that section has not been effectuated yet and it is unclear if, after the whole process has been completed, the section will be repealed at all.

Turning away from the sufficiency of the pleadings, Allstate presents a different argument: that the case should be dismissed to allow for "state insurance commissioners in the first instance to address whether the rates challenged in this case are unfairly discriminatory under their respective comprehensive state regulatory systems." (Doc. 206 at 16.) This argument implicates the doctrines of primary jurisdiction and exhaustion of administrative remedies. *See Allen v. State Farm Fire & Cas. Co.*, 59 F. Supp. 2d 1217, 1224 (S.D. Ala. 1999) ("'Exhaustion' applies where a claim is cognizable in

the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." (quoting *United States v. W. Pac. R.R.*, 352 U.S. 59, 63–64 (1956))). Allstate provides information that New York and South Carolina have "exhaustive systems of redress that allow allegedly aggrieved policyholders . . . to challenge an alleged unfairly discriminatory rate," *see* N.Y. Ins. Law § 2319(b) (McKinney, Westlaw through L.2010, chapters 1 to 56, 58, 59 and 61 to 285); S.C. Code Ann. § 38-73-1030 (West, Westlaw through 2009 Reg. Sess.), but it shows no other states that have the supposed exhaustive systems. (Doc. 206 at 16.) It also provides information that Alabama, Arizona and Georgia have statutes that regulate insurance rates so that they are not unfair, but it does not demonstrate if there is a regulatory body responsible for that regulation or if the statues themselves are sufficient for the regulation. Even if these individual deficiencies were corrected, demonstrating that South Carolina, Arizona, Alabama and Georgia have these systems does not advance the argument, as the Plaintiffs from those states or with policies in those states (Brown, Holman, Smith and Wolleydt) are already dismissed for improper venue. Additionally, although the New York argument would apply to Hyman, the remaining New York plaintiff, the statute which creates the administrative review of the rate only applies to review of the application of the rating system. *See* N.Y. Ins. Law § 2319(b) (noting that persons "aggrieved by the application of [an insurer's] rating system" may send a written request for the insurer "to review the manner in which such rating system has been applied in connection with the insurance afforded or offered" with appeal to the superintendent of insurance). Hyman and the rest of the plaintiffs are not challenging the application of the rating system to them;

they challenge that the rating system itself is unfairly discriminatory. If Hyman were to challenge the unfair rating system in this manner, he would not get anywhere because the system is not designed for the challenge he seeks to bring. Thus, Allstate's argument does not apply to his case. As to the rest of the plaintiffs in the case, the Court will not dismiss them based on a hunch or speculation that there may be "exhaustive systems of redress" or "comprehensive state regulatory systems."

Allstate's next challenge to the suit implicates the cases of *Avery v. State Farm Mutual Insurance Co.*, 835 N.E.2d 801 (Ill. 2005), and *Crichton v. Golden Rule Insurance Co.*, 576 F.3d 392 (7th Cir. 2009). Allstate argues that the majority of the fraudulent conduct at issue in the case took place outside of Illinois, meaning that the Plaintiffs' ICFA claims must fail. *See Avery*, 835 N.E.2d at 853 ("[W]e conclude that the General Assembly did not intend the Consumer Fraud Act to apply to fraudulent transactions which take place outside of Illinois."); *Crichton*, 576 F.3d at 396 ("The court held in *Avery* that nonresident plaintiffs may sue under the ICFA only if the circumstances relating to the alleged fraudulent transaction occurred mostly in Illinois."). The pleadings paint a different story. The Plaintiffs pleaded that Allstate was the entity that was responsible for determining credit scores and ratings for each policy issued by an Allstate entity and was therefore responsible for insurance pricing for all customers of Allstate insurance, regardless of the places and entities through which the policies were purchased. (Am. Compl. ¶ 47.) The amended complaint also indicates that these computations occurred at Allstate's Illinois headquarters. (*Id.*) Thus, the supposedly unfair conduct, as pleaded, took place in Illinois, meaning that the case, as alleged, does not violate *Avery* or *Crichton*.

Allstate's final attempt to assail the complaint argues matters outside the pleadings. It argues that it filed its insurance rates with the various governmental bodies responsible for regulating insurance (except for Nebraska), meaning that under the filed-rate doctrine, the Plaintiffs cannot sue regarding the difference in their rates. *See, e.g., Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577 (1981). In support, Allstate points to discovery indicating that the filed-rate doctrine applies, but this argument

14

has nothing to do with what has been pleaded, instead relying on discovery or other materials that the parties have uncovered in the case. Unlike other 12(b) motions, the Court does not look beyond the pleadings when determining if the Plaintiffs have failed to state a claim unless it converts the motion to a motion for summary judgment. *See Doss v. Clearwater Title Co.*, 551 F.3d 634, 639–40 (7th Cir. 2008). The pleadings do not indicate that Allstate filed its charged insurance rates with a regulatory agency, meaning that the Plaintiffs did not plead themselves out of court on this issue. Accordingly, this argument, like many others of Allstate, is premature. The Court could make this argument relevant by converting the motion into a motion for summary judgment; the Court can do this if the parties refer to matters outside the pleadings in a 12(b)(6) motion. Fed. R. Civ. P. 12(d); *Doss*, 551 F.3d at 639–40. The Court declines to do so here to avoid piecemeal summary adjudication; converting the 12(b)(6) motion into summary judgment would leave some of Allstate's arguments poorly developed from an evidentiary standpoint. Even if the Court did convert the motion, it would have to allow the Plaintiffs an opportunity to oppose summary judgment with discovery or argument demonstrating a material issue of fact or that judgment as a matter of law is inappropriate. Allstate can raise the issue when it moves for summary judgment, and the Plaintiffs will have a proper opportunity to address it at that stage.

## Conclusion

The Court **GRANTS** the motions to correct (Docs. 207, 208) and **DENIES** the motion to strike (Doc. 228). The Court **GRANTS** the motion to dismiss for improper venue (Doc. 203) and **DISMISSES WITHOUT PREJUDICE** Plaintiffs Anna Anderson; Bhagavan Balaji; James Bolen, Ishmael Brown, Sr.; Marilyn Butler; Allison Conrads; Willie Holman; Michael Kozicki; Gloria Smith; Larry Steiter and Theodore Wolleydt. The Court **GRANTS IN PART** the motion to dismiss for lack of standing (Doc. 201) and **DISMISSES FOR LACK OF SUBJECT-MATTER JURISDICTION** Plaintiff Larsine Adams. The Court **DENIES** the motion to dismiss for failure

to state a claim (Doc. 205). Remaining in the action are Plaintiffs Robert Johnson, Anthony Richardson, Lonzie L. Autry, Jack Calderone, Donita Dale, Lonnie Griffin, Roy Hyman, Wilbon Johnson, Lewis Langston, Jerry L. Nelson and Trina Perkins.

**IT IS SO ORDERED.**

**DATED September 29, 2010.**

**s/ Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**