IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT L. JOHNSON, SR. and LONZIE AUTRY, JR., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 07-cv-0781-SCW ) ) |
| ALLSTATE INSURANCE COMPANY, | ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

This case, originally brought as a putative class action, is much like an old bus traveling a long, winding mountain road. Along the way parties have gotten on and off, and the road has been blocked by numerous discovery disputes, leading the participants on unmarked detours. This Court simply wants to get this lawsuit onto the straightest, most efficient path toward a just and speedy resolution. Toward that end, the Court will briefly outline the procedural posture of this action and then rule on Plaintiff Robert Johnson and Lonzie Autry's ("Plaintiffs'") Motion to Compel (Doc. 259), and on a portion of Plaintiffs' Objections to the Newly Produced Discovery (Doc. 280).[1]

In their Amended Complaint filed on April 13, 2010 (Doc. 199), Plaintiffs' allege that Defendant Allstate Insurance Company's ("Allstate's") simultaneous use of multiple insurance scoring algorithms for similarly situated customers results in unfair discrimination and substantial injuries to Illinois consumers such as them. Plaintiffs' seek a declaration that Allstate's insurance scoring practices result in unlawful discrimination against its policyholders, and constitutes a

---

[1] These motions were originally filed by eleven named Plaintiffs but since filing, nine of these Plaintiffs have voluntarily dismissed themselves from this action by stipulation (*see* Doc. 284). Accordingly, only these two named Plaintiffs—both Illinois citizens for jurisdictional purposes—remain.

violation of Illinois law; specifically, the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*[2] Plaintiffs' also seek an award of damages, interest, costs and attorneys' fees.

On September 29, 2010, District Judge Michael J. Reagan denied Plaintiffs' Second Motion to Certify Class finding that their proposed classes were not suitable for treatment as a class action (*see* Doc. 238). On November 10, 2010, the Seventh Circuit Court of Appeals denied Plaintiffs' Petition for Leave to Appeal Judge Reagan's ruling under FEDERAL RULE OF CIVIL PROCEDURE 23(f). Then, on January 5, 2011, Judge Reagan granted Plaintiffs leave to file a "motion for clarification regarding discovery matters," which remains pending before him (Docs. 247, 251). On January 10, 2011, the parties filed their Notice and Consent to Proceed Before a Magistrate Judge and as such, the case was reassigned to the undersigned for the resolution of all proceedings pursuant to 28 U.S.C. § 636(c) (Doc 248).

This Court immediately began conducting telephonic status conferences in an attempt to resolve all of the outstanding discovery disputes, and a discovery schedule was set into place (Docs. 250, 253, 254). On February 24, 2011, the eleven remaining Plaintiffs filed a Motion to Compel Allstate to respond to a number of disputed interrogatories in which they sought algorithm timelines and "class-wide damages calculations" (Doc. 259, p. 8). On March 11, 2011, Allstate filed its Response in opposition to Plaintiffs' motion (Doc. 265). On March 25, 2011, this Court held another telephonic Status Conference with the parties, and set Plaintiffs' Motion to Compel for an

---

[2] Though not explicitly stated in the Amended Complaint, the parties appear to agree that this claim is implicit. The elements of a successful claim under ICFA are: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010). Plaintiffs also must show that Allstate's "unfair" conduct was the proximate cause of their alleged injuries. *Id.* at 935, 937; *see also Sound of Music Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d 910, 923 (7th Cir. 2007).

in-court hearing, along with numerous other deadlines (Doc. 275). During that teleconference, the Court also noted that after almost three and a half years, with a few limited exceptions, all discovery was now closed (*Id.*).

On April 14, 2011, Plaintiffs' filed their Objections to the Newly Produced Discovery that Allstate had propounded on Plaintiffs at the direction of this Court (Doc. 280). On April 15 and 21, 2011, nine of the remaining eleven Plaintiffs filed Stipulations of Voluntary Dismissal with Prejudice, which the Court noted were effective immediately without the necessity of any judicial action (Doc. 284). Thus, only Plaintiffs Robert Johnson, Sr. and Lonzie Autry, Jr.—both Illinois citizens for jurisdictional purposes—remain in this action. On April 29 and May 19, the Court held in-court discovery dispute hearings, lasting over eight hours in total, on Plaintiffs' pending Motion to Compel and Plaintiffs' Objections to Newly Produced Discovery.

The proceeding summary of this action's recent procedural history is important for a number of reasons. First, this Court has spent a significant amount of time hearing arguments on and considering the pending discovery disputes—all of which come with a substantial history. Along the way, this Court has familiarized itself with certain intricacies of a highly technical and complex subject matter; namely, insurance scoring algorithms. Further, the Court recognizes—as the parties appear to as well—that this action has changed significantly over the past three and a half years. Now before the Court, essentially, is a claim by two named Plaintiffs that Allstate's practice of simultaneously using multiple and varying insurance scoring algorithms for similarly situated Illinois policyholders violates the ICFA.

In their Motion to Compel (originally submitted by eleven Plaintiffs') Plaintiffs' argue that the discovery they are seeking—specifically, insurance algorithm timelines and class-wide damage computations—is essential to proving their claims under ICFA. This Court disagrees. First, it's worth noting that seeking algorithm timelines for any period other than the time period in which the

named Plaintiffs held their policies with Allstate is not warranted. Further, because both Plaintiffs are Illinois citizens, there is no longer any justification for seeking information regarding Allstate's insurance practices, policy lines, or procedures for any state other than Illinois. As such, the Court hereby **DENIES** Plaintiffs' request so far as it seeks class-wide damages for policyholders *outside* of the state of Illinois, none of whom remain in this action, and timelines beyond the period in which the two remaining Plaintiffs held their insurance policies with Allstate.

Indeed, at the May 19, 2011 discovery dispute hearing, Plaintiffs agreed to limit their own discovery request. The Plaintiffs seemed to have recognized that after dismissing all but two Plaintiffs, the size of their discovery request needed to be tailored to the present posture of the case. As such, Plaintiffs claimed that now they were only seeking damages calculations on behalf of Allstate's Illinois policyholders who held either a homeowners or a renters policy during the relevant time period (roughly 2002-2007). This more limited request was based on the two lines of insurance held by the two remaining Illinois plaintiffs (one Plaintiff had a homeowners policy and the other had a renters policy), and on the time period in which they held these policies (roughly 2002-2007). The damages calculations would entail computing the premiums for each individual Illinois policyholder, at each renewal period, *and under every algorithm in existence at the time of each individual's renewal period.* So, after a discovery detour that at its peak involved class-wide damages for all of Allstate's policy lines (and their corresponding algorithms) on a nationwide basis, the long winding road has led here—two Illinois Plaintiffs, seeking damages calculations for the two lines of insurance which they held during a roughly five-year period, on behalf of all similarly situated Illinois policyholders; calculated under each algorithm in use at the time that each individual policyholder's policy was renewed throughout the relevant time period.

The question this Court now must answer is whether this more limited—and yet still substantial—discovery request should be granted, and Allstate be compelled to provide Plaintiffs with the damages calculations that they are seeking. District courts have broad discretion in handling discovery-related matters. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646-47 (7th Cir. 2001). However, "[b]efore restricting discovery, the court should consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truthseeking function' in the particular case before the court." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

Plaintiffs argue that these damages calculations are essential for them to prove that Allstate's unfair practices are causing substantial injury to Illinois consumers. During the first in-court hearing, Plaintiffs claimed that Allstate is "holding all the cards," and without this information, Plaintiffs are not on level ground. Allstate responded that it has already provided Plaintiffs with all of the documents necessary to complete the damages calculations that they are seeking, and that they recently provided Plaintiffs with the algorithm timelines for the period in which their policies were active (Doc. 265, p. 8). Allstate also argues that it does not have the capacity to compute the damages calculations that Plaintiffs are seeking because of a number of highly technical changes in 2004 to credit scoring models; specifically, those relating to payment patterns. Credit reports are the primary data source for the relevant algorithm calculations. As such, Allstate argues that plugging in post-2004 credit report data into pre-2004 algorithms simply cannot be done. Plaintiffs responded with excerpts of deposition testimony from a few of Allstate's employees who worked on some of the relevant algorithms suggesting that such calculations might not be impossible, but their accuracy would be questionable. Ultimately, the parties dispute both the value of the requested damages calculations as well as their feasibility.

The Court agrees with Plaintiffs that the calculations they are seeking are clearly (and obviously) relevant to the issue of *damages*. The Court also is not convinced by Allstate's argument that it simply cannot create any automated mechanism to make the damages computations that Plaintiffs seek. That said, the Court *does* believe that such an undertaking would require significant time, technical expertise and substantial resources, meaning that this would undoubtedly be a burdensome undertaking for Allstate. So, the question simply becomes: does the value of the damages calculations in assisting the Court when it determines the merits of Plaintiffs' claims outweigh what appears likely to be a burdensome undertaking for Allstate?

The elements of a successful claim under ICFA are: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010). So, a Plaintiff may recover under ICFA by alleging that the conduct was either unfair or deceptive. *Id.* at 935. According to the Illinois Supreme Court, a defendant's conduct may be considered unfair if it (1) violates public policy; (2) is so oppressive that the consumer has little choice but to submit; *or* (3) injures consumers. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E. 2d 951, 961 (Ill. 2002), *quoting Cheshire Mortgage Service, Inc. v. Montes*, 612 A.2d 1130, 1143 (Conn. 1992) ("All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (internal quotation omitted)). In turn, according to the *Siegel* Court, a finding of injury to consumers requires that the injury: "(1) be substantial; (2) not be outweighed by any countervailing benefit to consumers or competition that the practice produces; and (3) be an injury that consumers themselves could not reasonably have avoided." *Siegel*, 612 F.3d at 935. ICFA Plaintiffs also must show that the defendant's "unfair" conduct was the proximate cause of their alleged injuries. *Id.* at 935, 937; *see also Sound of Music Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d 910, 923 (7th Cir. 2007).

In light of the foregoing elements, the Court is concerned that the damages calculations sought by Plaintiffs appear to be of questionable value at this stage of the case. This is true in part because Allstate is willing to stipulate to the fact that, when computing insurance premiums under various algorithms, at least 10% of all of Allstate's Illinois policyholders (roughly 850,000 customers) will end up with at least a $50 improvement in credit. In other words, *if* Plaintiffs theory of liability under ICFA is indeed sound, then the result could be *substantial* injury to Illinois consumers. And *if* Plaintiffs ICFA claims can withstand a forthcoming motion for summary judgment, then, at that point, more specific damages calculations based on a comparison of premiums, as computed under each of Allstate's relevant algorithms at each renewal period, might very well be warranted. However, these are very big "ifs," and as such, the potential viability (or lack thereof) of Plaintiffs ICFA claims is ultimately the crux of resolving this discovery dispute.

At this point in time, the Court is unsure if Plaintiffs' theory of liability under ICFA is even tenable.[3] As the Court noted at the hearing, it has serious concerns regarding whether Plaintiffs can show that Allstate's "unfair" conduct was the proximate cause of their alleged injuries. *See Siegel*, 612 F.3d 932, 935-37 (7th Cir. 2010). This issue, of course, will be resolved after the forthcoming dispositive motion is filed by Allstate. But the damages calculations that Plaintiffs are seeking bear little, if any, relevance to the Court's determination of the dispositive causation issue. Accordingly, based on the questionable value of the damages calculations to the key dispositive issues, there is no justification—at this time—for the Court to compel Allstate to undertake an ostensibly burdensome

---

[3] For example, under their own theory of liability, it is questionable whether these two Plaintiffs suffered any injury. During the second hearing, Plaintiffs' admitted that if each time a policyholders' policy was renewed they were scored under the newest algorithm, then they would not have a case. According to Allstate, both Plaintiffs were always scored under the most recent algorithms in use. Plaintiffs also argue that they should have been scored under the most favorable algorithm, even if it is older. This means that policyholders would continue to be simultaneously scored under various differing algorithms resulting in different (but more favorable) premiums. So, other than receiving better rates, the allegedly unfair practice of simultaneously scoring policyholders under varying algorithms would still be in effect.

exercise.  Plaintiffs' Motion to Compel is **DENIED**; this issue will not be revisited, if at all, until *after* the forthcoming Motion for Summary Judgment has been decided.

Finally, regarding Plaintiffs' Objections to the Newly Produced Discovery (Doc. 280):  the Court will shortly be undertaking an *in camera* review of all documents that Allstate has alleged are subject to attorney-client privilege (*see* Doc. 292).  However, Plaintiffs also challenge numerous documents withheld on the basis of work-product, pursuant to Federal Rule of Civil Procedure 26(b)(3).  Plaintiffs do not contest whether these documents are properly designated.  Instead, Plaintiffs argue (based on their belief) that many of these documents "contain highly relevant information that is otherwise unobtainable" (Doc. 280, p. 8).  As such, Plaintiffs' request that this Court also undertake an *in camera* review of these documents.

For reasons similar to those outlined above, the Court does not believe that such a burdensome undertaking is warranted by the generalized claim that some documents *might* contain relevant information.  Further, Plaintiffs seek these documents primarily to show that Allstate can, in fact, perform the damages calculations and analyses that it currently claims are impossible.  Once again, the Court does not find these calculations essential to its determination of this action on its merits.  Accordingly, Plaintiffs' Objection to the documents that are being withheld on the basis of *work-product* is hereby **OVERRULED**.  The remainder of Plaintiffs' Objections shall be ruled upon after the Court has completed its *in camera* review of those documents subject to attorney-client privilege.

**IT IS SO ORDERED**.

DATED June 14, 2011.

/s/ **Stephen C. Williams**
STEPHEN C. WILLIAMS
United States Magistrate Judge