# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT L. JOHNSON, SR., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 07-cv-0781-SCW |
| ) | |
| ALLSTATE INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

In this putative class action, Plaintiffs claim Defendant Allstate calculated premium rates for certain insurance policy holders in contravention of the consumer fraud laws of Illinois and other states. Class certification was denied on September 29, 2010 (Doc. 238). On January 10, 2010, all parties consented to have this action decided by a Magistrate Judge, in accordance with 28 U.S.C. § 636(c) (Doc. 248). The undersigned District Judge referred this case to United States Magistrate Judge Stephen C. Williams for all further proceedings (Doc. 249), although the parties and Judge Williams all agreed that the undersigned District Judge would rule on Plaintiffs' impending motion to clarify its prior rulings.

Plaintiffs' Motion for Clarification (Doc. 251) is now before the Court, as well as Defendant Allstate Insurance Company's Memorandum in Opposition (Doc. 255), and Plaintiffs' Reply (Doc. 257). Plaintiffs seek "clarification" of the Court's rulings regarding the timing of discovery and production of opinion testimony, and the ruling denying class certification. From Plaintiffs' perspective, the rulings are inconsistent.

## 1. Relevant Procedural History

Discovery has been contentious and lengthy, Allstate having disclosed approximately 3,000,000 documents, and Plaintiffs having had the unenviable task of combing through this large amount of technical information. As a result, the Court has attempted to accommodate the parties by amending the pretrial schedule.

Plaintiff's initiated this action on November 5, 2007. On March 18, 2008, an initial scheduling order was entered, setting a September 8, 2008, deadline for Plaintiffs to disclose their experts regarding class certification; Plaintiffs' motion for class certification was due September 15, 2008; and trial was set for September 28, 2009 (Doc. 18). Discovery was bifurcated, with a second round of discovery slated after the class certification issue was decided.

During 2008 and 2009, Allstate sent Plaintiffs around 2,000,000 documents in response to Plaintiffs' first round of interrogatories and document requests. Discovery was so voluminous and technical that on December 15, 2008, the Court granted the parties a seven month continuance (Doc. 58). Under that revised schedule, Plaintiffs' motion for class certification was due by May 8, 2009; and trial was moved to April 26, 2010. Nonetheless, Plaintiffs later complained of difficulty deciphering the documents relating to the algorithm scores. In particular, Plaintiffs had trouble determining the time periods that the various insurance-scoring algorithms and rating manuals were used for the different plaintiffs (*see* Doc. 89-12).

Due to the volume and the technical complexity of the information discovered, on May 5, 2009, the parties jointly filed a Motion for Extension of Class Certification Deadlines (Doc. 73). The Court granted the motion on May 11, 2009 (Doc. 75), extending the deadline for Plaintiffs' motion for class certification by 60 days, to July 7, 2009, and setting the date for

Plaintiffs' expert disclosure at June 15, 2009, with no rebuttal experts without leave of the court. Trial remained set for April 26, 2010.

Despite this 60-day extension, on July 2, 2009, the parties jointly moved for a third extension, again citing the volume and complexity of the discovery (Doc. 82). The Court granted the parties' joint motion on July 8, 2009 (Doc. 83), extending Plaintiffs' class certification motion deadline to July 28, 2009. In an effort to afford Plaintiffs additional time, they were given until July 28, 2009, to make their expert disclosure, and until September 4, 2009, to get their expert(s) deposed. Defendant's memorandum in opposition to class certification was not due until September 29, 2009. Trial remained set for April 26, 2010.

Even after multiple extensions were granted, Plaintiffs still had difficulty digesting the information related to algorithms and rating manuals contained in Allstate's documents. As a result, on July 21 and 23, 2009, Plaintiffs deposed Erin English, corporate representative for Allstate, on 12 separate topics. English's deposition was protracted due to incomplete documentation (*see* Doc. 86, p. 2 ¶ 4; *see also* Doc. 89-21 and 89-22). On July 26, 2009, with the July 28 deadline for Plaintiffs' motion for class certification fast approaching, and not having finished the deposition, the parties jointly filed a fourth motion for an extension of time (Doc. 86). The parties specified that there was a need for further production of documents, the corporate representative's deposition still needed to be completed, and these matters still needed to be reviewed by Plaintiffs' expert (Doc. 86, p. 2 ¶ 4). An extension of the expert disclosure deadlines was also sought (Doc. 86, p. 3 ¶ 5).

On July 27, 2009, the court denied this joint motion for extension of time, noting that "[c]ounsel practicing before this Court know from personal experience, as well as the

3

Court's website, that the Court sets specific, not presumptive trial dates" (Doc. 87). As the Order makes clear, the Court's calendar simply could not accommodate another extension.

On August 3, 2009, having missed the July 28 deadline to disclose their experts and to file their motion for class certification, Plaintiffs quickly moved for sanctions or, alternatively, for this Court to reconsider its decision to deny a further extension of time (Doc. 89). Plaintiffs based this motion on the fact that Allstate had sent them an additional 850,000 documents on July 28. Plaintiffs argued:

> It is simply impossible for Plaintiffs and their experts to (a) review this mountain of information; (b) determine the effect that the information has on class certification; and (c) make appropriate adjustments to both the motion for class certification and any expert reports before the August 4 deadline. Under these circumstances, the Court should enter an order conditionally certifying this case as a class action.
>
> * * * *
>
> Alternatively, Plaintiffs request that the Court reconsider, in part, its Order denying the Parties Joint Motion for Extension of Time (Doc. 87), and extend Plaintiffs' deadline to file their motion for class certification and to submit expert reports for 30 days. Plaintiffs understand the Court's desire to hold the current trial setting, and they are not asking the Court for a continuance. However, Plaintiffs reasonably believe that they need 30 days to review the substantial volume of documents and supplemental discovery response produced last week and incorporate that information into their class certification motion and expert reports.

(Doc. 89, pp. 8-9).

In response, Allstate asserted that the 850,000 documents were in response to Plaintiffs' relatively recent second round of interrogatories and document requests concerning new class definitions and named plaintiffs[1], whereas the first 2,000,000 documents disclosed were in response to the first round of interrogatories and document requests concerning the

---

[1] Plaintiffs amend their class definition during the class certification hearing on January 7, 2010 (*see* Doc. 150; Doc. 159, pp. 72, 127-128 and 130).

4

original class definitions and named plaintiffs (*see* Doc. 94). On August 4, 2009, Plaintiffs submitted their Motion to Certify the Class (Doc. 91), although their motion for sanctions and for reconsideration of the denial of an expanded schedule (Doc. 89) was still pending.

On September 3, 2009, the day before Allstate's response to the motion for class certification was due, Plaintiffs moved for leave to amend the complaint in order to add claims under the laws of four groups of states (Doc. 106). This was, admittedly, a peremptory move by Plaintiffs, should the Court conclude that Illinois law did not apply nationwide to Allstate's acts and practices.

On January 7, 2010, a hearing was held regarding the motion for class certification and other related motions, including the motion for sanctions and/or for reconsideration, and the motion to amend the complaint. On January 10, 2010, Allstate moved for clarification regarding its submission of PowerPoint slides during the class certification hearing (Doc. 152). In Plaintiffs' response to this motion, months after their July 28, 2009, deadline to disclose experts and *after* the class certification hearing, Plaintiffs moved to supplement the hearing's record with an affidavit from John Ulzheimer, an expert opining that named plaintiff Robert Johnson would have paid a lower premium if scored under a different algorithm active during the term of his insurance policy with Allstate (Doc. 162-6, pp. 1-3).

On March 29, 2010, the Court granted Plaintiffs leave to amend the complaint to add additional plaintiffs from other states (Doc. 191). The Court reasoned that, although an amendment two years into litigation would normally be prejudicial, the overall scheme at issue was the same, except that the new plaintiffs' policies and causes of action came from different states (Doc. 191, p. 4). Furthermore, during the class certification hearing, the Court had already permitted Plaintiffs to amend their class definition *nunc pro tunc*. The Court also ordered that a

new motion for class certification be filed, and that the parties re-brief the issue (Doc. 191, pp. 5-6). Relative to Plaintiffs' motion for sanctions against Allstate for "discovery dumping," the Court stated the following:

> This motion [for sanctions] is no longer an issue. Given the developments in the case, the Court will be giving the plaintiffs an opportunity to file a new class certification motion. As their motion for sanctions was premised on the prejudice caused by the voluminous and supposed late response to the discovery requests, the additional time that the Court is now granting to prepare a new motion for certification will cure whatever prejudice resulted from the alleged discovery abuse. But the Court cautions all sides that this type of discovery dumping will not be countenanced.

(Doc. 191, p. 6). Plaintiffs were given until April 12, 2010, to file an amended motion for class certification (Doc. 191, p. 7). Plaintiffs' alternate request for further amendment of the pre-certification schedule-- specifically the deadline for expert disclosures-- was not addressed by the Court.

On April 8, 2010, the parties jointly moved for an extension of time for Plaintiffs to file an amended complaint, for Plaintiffs' motion for class certification, and for Allstate's response, in order to accommodate the need for discovery related to the newly named plaintiffs (Doc. 192). Although ongoing discovery was discussed, the motion did not request an extension of time within which to identify experts. Ultimately, the Court granted a one-day extension of time to file the amended complaint, but the parties' motion was otherwise denied (Docs. 199 and 200). Plaintiffs also submitted their new Motion to Certify Class (Doc. 194).

On September 29, 2010, the Court issued a Memorandum and Order on Class Certification, denying Plaintiffs' Motion to Certify Class and Plaintiffs' motion to supplement the record of the class certification hearing with Mr. Ulzheimer's affidavit (Doc. 238). The Court found that Plaintiffs failed to demonstrate that they would adequately represent their

6

proposed classes and that their class action would not qualify under either Rule 23(b)(2) or (3) (Doc. 238, pp. 8-19).

In regards to the "adequacy of representation," the Court noted that Plaintiffs chose to define their classes broadly. The nationwide class, with some exceptions, consisted of people: (1) named on an automotive, motorcycle, homeowners, or renters' insurance policy, (2) issued by an Allstate-affiliated entity between August 1, 1999, and September 15, 2007, (3) whose premium was calculated at least in part through an insurance scoring algorithm, (4) the person was assigned to a tier less than the most favorable tier, and (5) due to the use of an algorithm that calculated a higher premium than another algorithm in effect at that time in the same state, company, and line. The proposed subclasses had largely similar definitions (Doc. 238, pp. 8-9). The Court reasoned that these broad class definitions necessarily overlapped with the merits of the case: "If the named plaintiffs actually satisfy the third, fourth and fifth criteria in the class, then they would have necessarily suffered the ill-effects of being rated under old algorithms when Allstate had moved on to another algorithm for the rest of its customers." (Doc. 238, p. 9.) Thus, it was necessary for the Court to conduct a preliminary inquiry into the merits of Plaintiffs' claims.

Looking into the merits, the Court noted that Mr. Ulzheimer's affidavit was the only evidence Plaintiffs had submitted that demonstrated whether any plaintiffs had premiums that would be lower under another algorithm. Ulzheimer's affidavit only pertained to named plaintiff Robert Johnson. The Court noted that this evidence was problematic because it was not proffered at the hearing on class certification, but instead was proffered in the response to Allstate's motion to supplement the hearing, after the hearing (Doc. 162).

The Court had previously ordered Plaintiffs' expert to take place by July 28, 2009. Even without this deadline, Plaintiffs' disclosure of Mr. Ulzheimer was well beyond the 30-day default deadline prescribed in Federal Rule of Civil Procedure 26(a)(2)(C). Additionally, the Court found that Plaintiffs' failure to disclose Ulzheimer was not "substantially justified" or "harmless" under Federal Rule of Civil Procedure 37(c)(1) (Doc. 238, pp. 11-13). In January, Plaintiffs had received the algorithms upon which Ulzheimer's affidavit was based-- well before the hearing or the so-called "discovery dump." The Court also found that the Plaintiffs would not qualify as a class action under either Rule 23(b)(2) as an equitable class, or Rule 23(b)(3) due to the class being unmanageable (Doc. 238, pp. 15-19).

### 2. The Present Motion

Plaintiffs now move for the Court to "clarify" its September 29, 2009, Memorandum and Order on Class Certification (Doc. 238) in light of perceived inequity resulting from supposedly inconsistent prior rulings. Specifically, Plaintiffs ask the Court to consider their expert John Ulzheimer as properly disclosed for the sake of proving Robert Johnson's damages, vacate the denial of Plaintiffs' Motion to Certify Class, and clarify the disposition of Plaintiffs' Motion for Sanctions.

Plaintiffs' "Motion for Clarification" is miscaptioned. The record speaks for itself and the Court does not perceive a need to clarify or parse its prior orders. What Plaintiffs want is for the Court to reconsider its rulings.

### 3. The Applicable Legal Standard

The Court first notes that Plaintiffs cite no legal authority or basis for "clarification" or reconsideration in its motion (Doc. 251). In their "Reply in Further Support of Plaintiffs' Motion for Clarification" (Doc. 257), Plaintiffs cite to Federal Rule of Civil Procedure 54(b), as well as *Divane v. Krull Elec. Co.*, 194 F.3d 845, 848 (7th Cir. 1999), for the propositions that a motion for clarification must be granted if the Court's ruling contained "a manifest error of law or fact." The standard articulated in *Divane* pertained to a Rule 59(e) motion, which is appropriate only "after the final judgment has been entered." *See Crestview Village Apartments v. U.S. Dept. of Housing and Urban Development*, 383 F.3d 552, 558 (7th Cir. 2004). There has been no final judgment entered in this case, so Plaintiffs' reference to Rule 59(e) is improper.[2]

In accordance with Federal Rule of Civil Procedure 54(b), an interlocutory order may be revised at any time before entry of final judgment adjudicating all claims and all parties' rights and liabilities. *Accord Marconi Wireless Tel. Co. of Am. v. United States,* 320 U.S. 1, 47-48 (1943). Reconsideration of an interlocutory order is committed to a court's sound discretion. *Lewis v. District of Columbia,* 736 F.Supp.2d 98, 102 (D.D.C. 2010); *see also Koelling v. Livesay,* 239 F.R.D. 517, 519 (S.D.Ill.2006); *Harrisonville Tel. Co. v. Illinois Commerce Comm'n,* 472 F.Supp.2d 1071, 1074 (S.D.Ill.2006); *Fisher v. National R.R. Passenger Corp.,* 152 F.R.D. 145, 149 (S.D.Ind.1993).

The Seventh Circuit has a restricted view of motions to reconsider interlocutory orders, stating that they serve a limited purpose: "to correct manifest errors of law or fact or to

---

[2] "The standard for the court's review of an interlocutory decision differs from the standards applied to final judgments under Federal Rules of Civil Procedure 59(e) and 60(b)." *Lewis v. District of Columbia,* 736 F.Supp.2d 98, 101-102 (D.D.C. 2010) (offering a thorough but succinct analysis of the differences between Rules 54(b), 59(e) and 60(b)).

present newly discovered evidence." *Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.,* 762 F.2d 557, 561 (7th Cir.1985) (quoting *Keene Corp. v. Int'l Fidelity Ins. Co.,* 561 F.Supp. 656, 665 (N.D.Ill.1982), *aff'd,* 736 F.2d 388 (7th Cir.1984)). Examples of manifest errors of law or fact include when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.,* 123 F.R.D. 282, 288 (N.D.Ill.1988) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va.1983). However, motions to reconsider are inappropriate for introducing evidence previously available or for tendering new legal theories. *Bally Export Corp. v. Balicar, Ltd.,* 804 F.2d 398, 404 (7th Cir.1986) (citing *Publishers Res., Inc.,* 762 F.2d at 561). "In general, a district court's rulings 'are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure,' and 'ill-founded requests for reconsideration of matters previously decided . . . needlessly take the court's attention from current matters and visit inequity upon opponents who, prevailing in an earlier proceeding, must nevertheless defend their position again and again.'" *Harrisonville Tel. Co.,* 472 F.Supp.2d at 1074 (quoting *Berger v. Xerox Ret. Income Guar. Plan,* 231 F.Supp.2d 804, 820 (S.D.Ill.2002)).

### 4. Discussion

In support of their present motion, Plaintiffs advance multiple arguments: that Plaintiffs did not have access to discovery necessary to disclose John Ulzheimer as an expert; that Allstate admitted as much in the March 8, 2010, joint motion for extended time; that Plaintiffs actually did submit Mr. Ulzheimer's affidavit prior to the Court's deadline, which was extended when Plaintiffs' Motion for Sanctions was denied as moot; and that the Court should vacate its ruling on the Motion to Certify Class because equity requires as much.

### a. Plaintiffs' Access to Discovery Concerning Johnson's Rate Calculation

In their Motion for Clarification, Plaintiffs claim they "did not have the discovery necessary to prove damages for each of the named plaintiffs[.]" This statement is somewhat misleading. Plaintiffs' Motion to Certify Class was not denied on the basis of failing to prove damages for *each* named plaintiff, but for failing to prove damages for *any* named plaintiff, which meant that no one adequately represented the proposed nationwide class (*see* Doc. 238, pp.8, 10 and 14). Plaintiffs needed only have available sufficient information to prove damages for one named plaintiff. Therefore, the crucial question is whether Plaintiffs had sufficient information available to them by the Court's deadline to disclose an expert relative to Robert Johnson.

Plaintiffs can only be excused from Rule 26(a)'s requirement of disclosing their experts if their failure to do so was "substantially justified" or "harmless." Fed.R.Civ.P. 37(c)(1). In the September 29, 2009, Memorandum and Order on Class Certification, the Court looked to "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851 (7th Cir. 2003); *see also* Doc. 238, pp. 11-14.

In the present motion, Plaintiffs claim that Allstate's first round of disclosures "did not contain the information necessary for Plaintiffs to calculate the insurance scores and premiums of the named plaintiffs." According to Plaintiffs, this prompted their second round of interrogatories and document requests, which in turn led to Allstate's subsequent 850,000 page disclosure, which they could not digest in time to disclose their expert.

The Court takes issue with various aspects of Plaintiffs' portrayal of discovery practice in this case. It is true that Allstate's disclosure in response to the first round of discovery was quite voluminous. Because of this, the Court granted a seven-month continuance and then two subsequent extensions. However, Allstate's 850,000 page disclosure related to Plaintiffs' second round of interrogatories and document requests, which did not contain information necessary to calculate *Robert Johnson's* insurance scores and premiums. Instead, the new information related to the amended class definitions and newly named plaintiffs (Doc. 192, p. 2). Allstate's second round of disclosures, although voluminous, does not evince "bad faith or willfulness involved in not disclosing the evidence" that would prevent Plaintiffs from disclosing an expert relative to Robert Johnson.

Plaintiffs have presented no information that would suggest they were missing critical information to disclose their expert. In fact, the docket suggests they had access to all necessary information to disclose an expert by the deadline. As the Court noted in its Memorandum and Order, Plaintiffs had available sufficient information by the Court's deadline to disclose an expert to opine about Robert Johnson's damages (Doc. 238, p. 12). For example, as early as May 5, 2008, Plaintiffs had access to an "IFS table" containing Robert Johnson's insurance issuing company, Johnson's policy numbers and policy types, the date his insurance scores were determined, the period each policy was in effect, the rating manual in effect at the time the insurance scores were determined, the "IS group," and the algorithm used to determine the insurance score (Doc. 89-12, p. 13; Doc. 89-20, p. 12). In fact, Plaintiffs have proffered nothing that suggests information related to Robert Johnson's rate calculation was unavailable (*see* Doc. 162-6, p. 2).

As noted in his affidavit, Mr. Ulzheimer listed the Bates numbers of the documents

he relied upon (Doc. 162-6, p. 2). Parties' correspondence contained in the docket shows that, at a minimum, documents through Bates No. A1543363 were disclosed by June 23, 2009 (Doc. 89-15, p. 1). The only documents used by Mr. Ulzheimer that were not disclosed before the expert disclosure deadline were IFS spec sheets provided by Allstate to the FTC, at Bates Nos. A3697181–88 (Doc. 89-15, p. 1; Doc. 155). Plaintiffs have advanced no arguments as to why these specific documents were critical to an expert opinion relative to Robert Johnson. It appears Mr. Ulzheimer reviewed these documents to help determine whether Mr. Johnson's credit score would be raised due to a "clean" credit report, or lowered due to an "unacceptable" report. In the end, though, Ulzheimer did not use these factors at all: "[F]or calculation of score I did not include either a deduction for "clean" or an addition for 'unacceptable'" (Doc. 162-6, p. 9). Thus, although apparently not disclosed before the expert disclosure deadline, the contents of these documents were not necessary for Mr. Ulzheimer, or any expert, to give an opinion about Robert Johnson's damages. Plaintiffs were not prejudiced by the absence of these documents. Accordingly, the Court was not clearly erroneous in finding Plaintiffs' failure to timely disclose their expert was not "substantially justified" or "harmless."

### b. Joint Motion for Extension of Time

Plaintiffs next assert that Allstate, in jointly moving for a time extension with Plaintiffs, implicitly admitted it had not produced sufficient discovery to allow Plaintiffs to disclose their expert. This is not supported by the docket. The parties' joint motion was entitled Plaintiffs' and Defendant's Agreed Motion for an Extension of Time for Deadlines to File Amended Complaint, Motion for Class Certification, and Response to Motion for Class Certification (Doc. 192). Notably, the caption does not suggest this was a motion to extend the

expert disclosure deadline. In fact, there is no language in this motion seeking extension of the expert disclosure deadline. Nor does the motion concern information related to disclosure of an expert opining about Robert Johnson's damages. Instead, the motion seeks additional time to review the disclosed information after Plaintiffs "requested that Allstate provide the insurance scoring information pertaining to the *new plaintiffs*." Because of this, this joint motion is neither evidence that Allstate engaged in "discovery dumping" that prejudiced Plaintiffs' ability to disclose Mr. Ulzheimer before the Court's deadline, nor that Allstate admitted the same."

### c. Submission of the Affidavit Prior to the Court's Revised Deadline and Plaintiffs' Motion for Sanctions

As the Court notes in its Memorandum and Order, the date of Plaintiffs' deadline for expert disclosure was given with the utmost clarity: "Plaintiffs expert disclosure and written reports pursuant to Federal Rule of Civil Procedure 26 shall be provided by July 28, 2009" (Doc. 83). Despite this, Plaintiffs claim that the Court implicitly extended the July 28 deadline in the March 29, 2010, Memorandum and Order. Plaintiffs' point specifically to the following language:

> As [Plaintiffs'] motion for sanctions was premised on the prejudice caused by the voluminous and supposed late response to the discovery requests, the additional time that the Court is now granting to prepare a new motion for certification will cure whatever prejudice resulted from the alleged discovery abuse.

(Doc. 191, p. 6). Plaintiffs' argue that because they "could not provide expert reports without discovery," they were given *carte blanche* to "cure whatever prejudice resulted from the alleged discovery abuse"—meaning Plaintiffs could submit Ulzheimer's report any time prior to the new class certification motion (Doc. 251, p. 3).

14

Plaintiffs' interpretation of the March 29, 2010, Memorandum and Order is not reasonable. The alleged discovery abuse pertained to Allstate's 850,000 document disclosure during the second round of discovery. That round of discovery did not concern Robert Johnson (Doc. 192). In granting time to cure any prejudice resulting from this second round of disclosures, the Court found the Motion for Sanctions had become moot. Plaintiffs' ability to meet the Court's expert disclosure deadline relative to Robert Johnson was unaffected. Any reading of the Court's language to mean *all* deadlines were extended, including those unaffected by alleged discovery abuse, would not be a reasonable one.

Instead, Plaintiffs should have known the Court would strictly stand by its July 28, 2009, deadline. The Court has previously reminded the parties that it strictly adheres to its deadlines: "Counsel practicing before this Court know from personal experience, as well as the Court's website, that the Court sets specific, not presumptive trial dates" (Doc. 87). As Allstate identifies, whenever the Court has extended deadlines it has done so expressly and without confusion (*see e.g.* Docs. 75 and 87). In light of the Court's policy to use a "firm hand" in "adhering to the deadlines established," *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 851-852 (7th Cir. 2002), Plaintiffs' should have known that their failure to meet the July 28, 2009, expert disclosure deadline would be fatal to Mr. Ulzheimer's opinions.

Leave to amend the complaint was not granted in order for Plaintiffs to cure their failure to timely disclose and expert (*see* Doc. 191, p. 4). Consequently, when the Court allowed Plaintiffs an opportunity to file an amended motion for class certification the perceived discovery abuse was cured, thereby obviating the need for sanctions or a revised schedule (see Doc. 191, p. 6). Thus, the Court's rulings regarding class certification and sanctions are consistent.

#### d. Other Grounds for Denying Plaintiffs' Motion to Certify Class

In the September 29, 2010, Memorandum and Order (Doc. 238), aside from denying Plaintiffs' Motion to Certify Class on the grounds that the named plaintiffs did not adequately represent their putative classes, the Court also held that Plaintiffs' proposed classes did not satisfy the requirements of either Rule 23(b)(2) or (3). Rule 23(b)(2) requires that "injunctive or declaratory relief be the predominant remedy requested for the class members[,]" *Doe v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466, 477 (N.D.Ill. 1992), or in other words that "damages are only 'incidental,'" to the relief sought. *In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005). In the September 29, 2010, Memorandum and Order, the Court found that damages here were not incidental, and so this case cannot proceed under Rule 23(b)(2) (Doc. 238, pp. 16-17). Plaintiffs do not challenge this specific determination.

The Court also found that Plaintiffs failed to meet the requirements of Rule 23(b)(3) (Doc. 238, pp. 18-19). This rule "requires that 'the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.'" *Pella Corp. v. Salzman*, 606 F.3d 391, 393 (7th Cir. 2010) (quoting Fed. R. Civ. P. 23(b)(3)). In its Memorandum and Order, the Court held that "ascertaining the members of either the nationwide class or the subclasses would be time consuming and a 23(b)(3) class . . . is not necessarily better than individual adjudication," and that Plaintiffs failed to demonstrate that their class definitions would be manageable (Doc. 238, p. 18). Accordingly, the Court found that Plaintiffs' could not proceed under Rule 23(b)(3). Plaintiffs do not challenge this determination.

Plaintiffs' Motion to Certify Class has failed to satisfy the requirements of either Rule 23(b)(2) or (3). Whether the Court erred in failing to consider Mr. Ulzheimer's affidavit is independent of these two grounds. Therefore, the Court's findings on Plaintiffs' Motion to Certify cannot be reversed even if the Court erred with respect to Ulzheimer's affidavit.

### e. Equity does Not Require Vacating the Court's Ruling on Plaintiffs' Motion to Certify Class

Lastly, Plaintiffs argue that, due to Allstate's discovery abuses, equity requires the Court to vacate its ruling on Plaintiffs' Motion to Certify the Class. As previously discussed, any alleged discovery abuse concerns Allstate's second round of disclosures, which did not concern Robert Johnson or impact Ulzheimer's opinion (Doc. 192). Therefore, any discovery abuse could not have affected Plaintiffs' ability to disclose an expert to give an opinion about Robert Johnson's damages before the Court's deadline. Aside from declining to accept Mr. Ulzheimer's affidavit, and then finding that Plaintiffs do not adequately represent their class, the Court denied Plaintiffs' motion on the grounds that Plaintiffs would not qualify for class action under either Rule 23(b)(2) as an equitable class, or 23(b)(3) due to the class being unmanageable (Doc. 238 pp. 15-19). Therefore, equity does not require the Court to vacate its ruling.

Insofar as Plaintiffs ask that the undersigned Judge "clarify" that Plaintiffs may resubmit a motion for class certification to Judge Williams, any such decision is for Judge Williams to decide, upon a proper motion.

### 5. Conclusion

In light of the foregoing, Plaintiffs' Motion for Clarification (Doc. 251) is **DENIED** in all respects. Plaintiffs have failed to highlight a manifest error of law or fact that would warrant reconsideration and a change of the Court's prior rulings.

**IT IS SO ORDERED**

**DATED: August 9, 2011**

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**UNITED STATES DISTRICT JUDGE**