**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ROBERT JOHNSON, SR., and LONZIE AUTRY, JR.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 07–cv–0781–SCW** |
| **vs.** | ) | |
| | ) | |
| **ALLSTATE INS. CO.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# ORDER

**WILLIAMS, Magistrate Judge:**

This case was filed as a putative class action in November 2007.  Class certification was denied, and after the two remaining putative class representatives were dismissed with prejudice, final judgment was entered for Defendant Allstate Insurance Company (Allstate).  The case now comes before the Court on Allstate's Bill of Costs (Doc. 318).  For the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** Allstate's Bill of Costs (**Doc. 318**), and **ORDERS** Plaintiffs Robert Johnson, Sr., and Lonzie Autrey, Jr., to be **taxed in the amount of $22,213.20**.

## BACKGROUND

In November 2007, four putative class representatives, including Robert Johnson, sued Allstate on a theory that Allstate treated them unfairly by applying outdated scoring algorithms to calculate their insurance premiums, thus violating Illinois' Consumer Fraud and Deceptive Business Practices Act.  Two of those plaintiffs were dismissed for lack of subject-matter jurisdiction in September 2009.  (*See* Doc. 124; Doc. 235).  In March 2010, pursuant to Federal Rule 15(a), District Judge Reagan granted leave to amend the complaint so as to add twenty-one individuals—

including Lonzie Autrey, Jr.[1]—as plaintiffs.  (*See* Doc. 105; Doc. 191).  An Amended Complaint with twenty-three named plaintiffs was filed on April 13, 2010.  (Doc. 199).

On September 29, 2010, Judge Reagan dismissed one plaintiff for lack of subject-matter jurisdiction, and dismissed without prejudice eleven more.  (Doc. 237).  Class certification was denied the same day.  (Doc. 238).  Pursuant to 28 U.S.C. § 636(c) and Rule 73, all parties consented to a trial before a magistrate, and on January 11, 2011, the case—which at the time included eleven plaintiffs—was reassigned to the undersigned magistrate judge.  (Doc. 249).

In April 2011, pursuant to Federal Rule 41(a), the parties (including Allstate) stipulated to the voluntary dismissal with prejudice of nine plaintiffs.  (Doc. 281; Doc. 282).   Only Lonzie Autrey and Robert Johnson remained as plaintiffs.  In August 2011, almost four years after the suit was filed, they filed a motion to voluntarily dismiss their case without prejudice pursuant to Federal Rule 41.  (Doc. 306).  Defendant, arguing it would suffer plain legal prejudice should the case be dismissed without prejudice after such a long period of intensive discovery and motion practice, opposed Rule 41 dismissal.  (Doc. 307).  To assuage Allstate's concerns about future litigation, Plaintiffs agreed to seek dismissal *with* prejudice.  (Doc. 310).

The Court, in its discretion under Federal Rule 41(a)(2) and Seventh Circuit precedent (**see Marlow v. Winston & Strawn, 19 F.3d 300, 304 (7th Cir. 1994)**), imposed terms on the dismissal.  **See also Ratkovich v. Smith Kline, 951 F.2d 155, 158 (7th Cir. 1991) (terms and conditions are the *quid pro quo* of allowing a plaintiff to dismiss his suit).**  Plaintiffs were permitted to dismiss with prejudice, but on the condition that Allstate could seek costs pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d)(1).  (Doc. 315).  Plaintiffs, of course, were allowed to attempt to show they are "incapable of paying court-imposed costs at this time or in the future."

---

[1] An affidavit he submits makes it clear the plaintiff's name is spelled "Autrey" and not, as it appears on the docket, "Autry."  The Clerk is DIRECTED to edit the docket accordingly, and replace "Autry" with "Autrey."

*See Rivera v. City of Chi.*, **469 F.3d 631, 635 (7th Cir. 2006).**  Now before the Court is Allstate's timely-filed Bill of Costs, in which it asks for **$982,264.24** (Doc. 318).

The Bill of Costs includes subtotals for three categories.  Allstate asks for $23,276.13 for "Fees for printed or electronically recorded transcripts necessarily obtained for use in the case." (Doc. 318).  For its "Other Costs" incurred, Allstate requests $469.16.  (*Id.*).  Allstate's weightiest request is $958,518.95 for "Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case."  (*Id.*).

Unsurprisingly, it is the third category the parties dispute.  Broken down further, the $958,518 comprises four smaller totals.  For "processing and producing electronic copy documents necessarily obtained for use in this case," Allstate's costs are $896,699.  (Doc. 318-1, p. 3).  Allstate paid third-party provider KPMG that amount for converting documents from one electronic format into another, more searchable form.  (Doc. 318-1, p. 3).  Allstate paid KPMG $21,587 ($21,297.47 for "External Duplicating" and $290.30 for "Internal Duplicating") for processing and producing hard copies for use in the case.  (Doc. 318-1, p. 4).  Finally, Allstate paid KPMG $40,232.18 for "exemplification necessarily obtained for use in this case."  (*Id.*).

Also submitted during briefing were sworn affidavits from Plaintiffs Johnson and Autrey.  (Doc. 327-1 and Doc. 327-2, respectively).  Johnson is a 66-year-old retiree with $1,400 in monthly income, a financially dependent wife, $600 in his savings account, and $62,000 in debts. (Doc. 327-1).  His non-liquid assets, which include a 1992 pickup, a 1973 Johnboat, two lots in East St. Louis and the equity in his home, total $22,200.  (*Id.*).  Autrey is a 72-year-old retiree with $1,500 in monthly income, no available cash, and $2,000 in debt.  (Doc. 327-2).  Autrey's assets are limited to a 2002 Honda which he values at $4,362.  (*Id.*).  Both Plaintiffs swear they will not be able to pay Allstate's costs now or in the future.  Each Plaintiff's contract with Plaintiff's counsel includes the following fee agreement:

THIS IS A CONTINGENT FEE AGREEMENT — ANY MONETARY OBLIGATIONS OF THE UNDERSIGNED AND THE OTHER CLASS MEMBERS ARISING OUT OF THIS CLASS ACTION LAWSUIT ARE CONTINGENT UPON A FAVORABLE SETTLEMENT, JUDGMENT OR OTHER RESOLUTION ACCEPTABLE TO THE CLASS REPRESENTATIVE AND TO THE COURT, **i.e.,** **IF NO RECOVERY IS HAD IN THE CASE, NEITHER I, NOR ANY OTHER MEMBER OF THE CLASS, WILL OWE MY ATTORNEYS ANY MONEY.**

The issue is ripe: it has been exhaustively briefed in a series of responses, replies, sur-replies, and notices of supplemental authority.  (Docs. 327, 329, 330, 331, 334, 335, 339, and 340). Plaintiffs argue that Allstate's Bill of Costs should be reduced for two reasons: (1) because the Bill of Costs (particularly the $958,518.95 for "exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case") is both non-compensable and overstated, and (2) because the Plaintiffs are indigent.  Defendants counter that § 1920(4) permits recovery of all the costs they have outlined, and that Plaintiffs are not entitled to any reduction in taxed costs due to indigency.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 54(d) gives courts the discretion to award costs to prevailing parties.  ***Taniguchi v. Kan Pacific Saipan, Ltd.*, --- U.S. ----, 132 S.Ct. 1997, 2001 (2011).**  The Rule provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  **FED. R. CIV. P. 54(d)(1).**  To be compensable, a particular expense must fall into one of the categories of costs statutorily authorized for reimbursement.  ***Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987)).**  The statutory provision that limns "costs" under Rule 54(d) is 28 U.S.C. § 1920. ***Taniguchi*, 132 S.Ct. at 2000–01.**  Courts may further limit costs, even when an item qualifies under § 1920, if a court finds the item was not "necessarily obtained for use in the case," ***Cefalu*, 211 F.3d at 428**, or if the amount assessed for that item is unreasonable, ***Majeske v. City of Chi.*, 218 F.3d 816, 824 (7th Cir. 2000).**

4

Section 1920 enumerates six categories of compensable costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828.  **28 U.S.C. § 1920**.  The parties do not dispute the $23,276.13 claimed by Allstate under § 1920(2) for "fees for printed or electronically recorded transcripts," or Allstate's claim (for which they cite no statutory or common law authority) for "other costs" of $469.16, the price of shipping production documents to Plaintiffs' counsel.

But the parties do dispute the contours of § 1920(4), which allows taxation of fees for exemplification and costs of making copies of any materials where the copies are necessarily obtained for use in the case.  Defendant asserts that this case is controlled by *Hecker v. Deere & Co.*  According to the Seventh Circuit, the *Hecker* district court record supported a prevailing defendant's characterization of costs as "converting computer data into a readable format in response to [the losing side's] discovery requests."  **Hecker, 556 F.3d 575, 591 (7th Cir. 2009).**[2]  The Seventh Circuit summarily concluded that "such costs are recoverable under 28 U.S.C. § 1920," and affirmed the award of costs to that defendant.  **Id.**  The *Hecker* district court's discussion was limited to the following:

---

[2] Defendants argue that an earlier case, *Northbrook Excess*, is no longer controlling law.  In that case, the Seventh Circuit held that expenditures for a computerized litigation system are not taxable costs under § 1920.  **Northbrook Excess & Surplus Ins. Co. v. Proctor & Gamble Co., 924 F.2d 633, 643–44 (7th Cir. 1991).**  But § 1920(4) was expanded in 2008, changed from allowing taxation for "copies of papers" to allowing taxation for "copies of any materials."  Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110-406, § 6, 122 Stat. 4291 (2008).  It may be that the 2008 amendment of § 1920 does not change the underlying analysis, but given Congress' intent to expand the costs allowed and the clear direction of the Third Circuit's *Race Tires* decision (discussed below), the Court will undertake analyze the instant Bill of Costs under the assumption that *Northbrook Excess* is no longer sufficient to understand the contours of §1920(4).

> [Defendant] seeks reimbursement of $159,728.40 for exemplification costs. Plaintiff notes that $141.022.00 of these expenses are for "processing." [Defendant] states that the expenses were incurred in responded [*sic*] to plaintiffs' four sets of documents, which exceeded 97,000 pages. [Defendant] asserts the processing charges relate to the selection and conversion of electronic documents that did not involve attorney review . . . Plaintiffs do not indicate that defendants deviated from any request by them to produce the discovery documents in a specific manner.

*Hecker v. Deere & Co.*, No. 06-cv-0719-jcs, slip op. at 11 (W.D. Wis. Dec. 31, 2007). The *Hecker* district court awarded the full $159,728.40 requested by the defendant.

Plaintiffs attempt to distinguish the instant case from *Hecker* (or at least Allstate's reading of *Hecker*), and argue the analysis should be guided by *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, where the Third Circuit recently held that none of the electronic discovery activities performed by a third party vendor could be regarded as "exemplification" of materials, and that only scanning and file format conversion could be considered to be "making copies." **Race Tires, 674 F.3d 158 (3d Cir. 2012)**. In that case, the Third Circuit reversed an award of costs under § 1920(4). The *Race Tires* analysis begins with a discussion of § 1920 through a historical lens. **Id. at 164.** Even in 1853, when Congress first meant to "impose rigid controls on cost-shifting in federal courts," **id. (quoting *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987)),** the controlling statute included language that "lawful fees for exemplification and copies of papers necessarily obtained for use on trial . . . shall be taxed by a judge or clerk of the court," **id. (citing the Fee Act of 1853, ch. 80, 10 Stat. 18(1853)).**[3]   The Third Circuit rejected the notion that the terms

---

[3] In **Taniguchi v. Kan Pacific Saipan, Ltd.,** which came down two months after *Race Tires*, the Supreme Court began its analysis of § 1920 with a similar historical discussion. *See* 132 S.Ct. 1997, 2001–02 (2012). **Taniguchi** deals with the meaning of § 1920(6) rather than § 1920(4), but both *Race Tires* and *Taniguchi* support a reading of § 1920(4) that calls for delineation between "exemplification" and "copies of any materials," since each decision is underpinned by the limiting nature of Congressional intent, as well as the importance of the statutory text. **See Taniguchi, 132 S.Ct. at 2001 (Congress passed a "far-reaching Act specifying in detail the nature and amount of the taxable items of cost in the federal courts" (internal citation omitted)); Race Tires, 674 F.3d at 164 ("the comprehensive scope of the [1853] Act and the particularity with which it was drafted demonstrated . . . that Congress meant to impose rigid controls on cost-shifting in federal courts") (quoting Crawford Fittings, 482 U.S. at 444). See also Taniguchi, 132 S.Ct. at 2002 ("[W]hen a term goes undefined in a statute, we give the term its ordinary meaning"); Race Tires, 674 F.3d at 165 ("[T]he use of different words or terms within a statutes demonstrates that Congress intended to convey a different meaning for those words")(internal citation and quotation marks omitted).**

"exemplification" and "the making of copies" are indistinguishable (the defendants had not drawn any "real distinction" between the two terms), and proceeded to hold that, since ESI vendors' work did not produce illustrative evidence or the authentication of public records, it could not be considered "exemplification."  Turning to the definition of "copy," the Third Circuit rejected the district court's conclusion that *all* electronic discovery charges were compensable as "copies of any materials" under § 1920(4).  ***Id.* at 167–68.**  The Third Circuit concluded that "only the scanning of hard copy documents, the conversion of native files to TIFF,[4] and the transfer of VHS tapes to DVD involved 'copying,' and that the costs attributable to only those activities are recoverable" under § 1920(4).  ***Id.* at 171.**

Here, it is first worth mentioning that *Race Tires* and *Hecker* are not completely incongruous.  When it comes to data conversion and the creation of easily-searchable file formats, the Seventh Circuit and Third Circuit are on the same page.  *Race Tires* cites *Hecker* for the proposition that discovery-related conversion of data into a readable format is taxable under § 1920.  ***Race Tires*, 674 F.3d at 167.**  That proposition will guide the instant analysis.

But the instant case will also be guided by the more detailed *Race Tires* decision, which, to start with, delineates between § 1920's categories of exemplification and making copies under § 1920.  *Hecker* makes no such distinction.  In fact, the *Hecker* district court taxed discovery-related ESI costs as exemplification costs,[5] a conclusion that seems outside even the Seventh Circuit's expansive definition of exemplification.  **See *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 427–28 (7th Cir. 2000) (exemplification encompasses authenticating a true copy of a public record; the expense of preparing maps, charts, graphs, photographs, motion pictures, photostats, and kindred materials; and the cost of graphics services for preparing exhibits).**

---

[4] "Tagged Image File Format," a file format that is easily searchable for specific terms.  **See *Race Tires*, 674 F.3d at 161.**

[5] The Seventh Circuit's brief analysis of § 1920(4) in *Hecker* relied on its deference to the district court's discretion, not a parsing out of what costs are exemplification versus what costs are for copies of any materials.

It seems unlikely that the distinct terms "exemplification" and "copies of any materials" should be analyzed without accounting for their differences. ***See United States v. Alvarenga-Silva*, 324 F.3d 884, 887 (7th Cir. 2003) ("Courts should avoid statutory constructions that render another part of the same provision superfluous.").** In addition to offering guidance as to which statutory term covers which asserted cost, *Race Tires* goes even further by distinguishing five categories that comprise the ESI services: (1) collecting and preserving ESI; (2) processing and indexing ESI; (3) keyword searching of ESI for responsive and privileged documents; (4) converting native files to TIFF; and (5) scanning paper documents to create electronic images. In other words, *Hecker* (which *Race Tires* parallels on the issue) provides a starting point in articulating that Allstate's discovery-related costs of file conversion are compensable. But the *Race Tires* analysis, which is more thorough than *Hecker* simply because the issue was squarely before the Court, is helpful—in the absence of controlling Seventh Circuit caselaw—for determining what other costs are, or are not, compensable under § 1920(4).

One additional consideration is pertinent here under the Rule 54(d)(1) analysis. While there is a presumption that the losing party will pay costs, courts have discretion to direct otherwise. ***Rivera v. City of Chi.*, 469 F.3d 631, 634 (7th Cir. 2006).** District courts may consider a plaintiff's indigency in denying taxation of Rule 54(d) costs. **Id. (citing *Mother & Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003)).**

## ANALYSIS

The total costs taxed against Autrey and Johnson requires discussion of three issues: (1) the amount of Allstate's Bill of Costs compensable under Rule 54(d) and § 1920; (2) the proportion of those costs for which Plaintiffs should be responsible; and (3) whether Plaintiffs Johnson and Autrey are exempt from taxation of costs under the indigency exception. Because § 1920 does not allow for recovery of all the costs sought by Allstate, and because Defendants

stipulated to the voluntarily dismissal of nine named plaintiffs, the Court will reduce the amount taxed. But the indigency exception affords no further relief to Plaintiffs Johnson or Autrey.

  1. **Allstate's Compensable Costs under § 1920(4)**

Federal Rule of Civil Procedure 54 states, in pertinent part, that costs "should be allowed to the prevailing party." **Fed. R. Civ. P. 54(d)(1).** As used in Rule 54(d), the term "costs" is congruent with 28 U.S.C. § 1920. **Taniguchi, 132 S.Ct. at 2000–01. See also id. at 2001 (quoting *Crawford Fittings*, 482 U.S. at 441) (the Supreme Court has "rejected the view that 'the discretion granted by Rule 54(d) is a separate source of power to tax as costs expenses not enumerated in § 1920.'").** At issue here is § 1920(4), which allows recovery of "fees for exemplification and the costs of making copies of any materials for use in the case." In the Seventh Circuit, "exemplification" encompasses authenticating a true copy of a public record; preparing maps, charts, graphs, photographs, motion pictures, photostats, and kindred materials; and graphics services for preparing exhibits. **Cefalu v. Vill. of Elk Grove, 211 F.3d 416, 427–28 (7th Cir. 2000).**

As discussed above, the Court will follow *Hecker v. Deere & Co.* for the proposition that the costs of converting data into readable format are compensable under § 1920(4). **Hecker, 556 F.3d 575, 591 (7th Cir. 2009). Accord Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158, 167 (3d Cir. 2012).** But not all electronic discovery consultant charges are taxable. **Race Tires, 674 F.3d at 169.** Non-compensable costs include collecting and preserving ESI, processing and indexing ESI, and keyword searching of ESI for responsive and privileged documents. **See id. at 167–71.**

The Court will consider each subcategory of costs submitted by Allstate, and examine the details of the subcategories that require further scrutiny. Allstate's Bill of Costs is submitted to the Court as follows (*see* Doc. 318):

|   | Allstate's Cost | Amount Asserted |
|---|---|---|
| A | Creation of Litigation Database, processing of ESI, extraction of metadata, & rendering ESI word searchable | $        129,243.00 |
| B | Deduplication of ESI | $        131,127.00 |
| C | Creation of TIFF images | $          34,332.00 |
| D | Electronic Data Hosting | $        498,050.00 |
| E | Preparation of Productions of ESI | $        103,947.00 |
| F | Creation of Hard Copy Productions | $          21,297.47 |
| G | Photocopies | $               290.30 |
| H | Graphics used at Hearings | $          40,232.18 |
|   | **Subtotal: Exemplification & Copies of Any Materials** | **$        958,518.95** |
| I | **Transcripts** | **$          23,276.13** |
| J | **Other Costs** | **$               469.16** |
|   | ***TOTAL*** | ***$        982,264.24*** |

Each subcategory of Allstate's costs will be examined in turn.

### A. Creation of Litigation Database, Processing of ESI, Extraction of Metadata, & Rendering ESI Word Searchable

Allstate incurred costs of $129,243.00 for services it procured from KPMG for the broad task of "creating of litigation database, processing of ESI, extraction of metadata, and rendering ESI word searchable." Of those four separate activities, only the rendering of ESI into a word searchable format is compensable within the ambit of *Hecker* and *Race Tires*. According to the KPMG employee supervising the services with Allstate, making ESI word searchable through "text capture," which was apparently utilized here, produces the same result as optical character

recognition ("OCR").[6]  *Hecker* permitted recovery of costs for that specific purpose, "converting computer data into a readable format in response to [the losing party's] discovery requests." **Hecker, 556 F.3d at 591.**  *Race Tires* (which cites *Hecker* for the underlying proposition) contemplates the same result: "conversion of native files to the agreed-upon format for production of ESI constitute[s] 'making copies of materials.'"  **Race Tires, 674 F.3d at 167.  See id. at 170 (citing with approval *In re Fast Memory Erase*, 2010 WL 5093945, at \*4 (N.D. Tex. Nov. 10, 2010) (district court awarded costs for TIFF/OCR conversion but disallowed over $860,000 for collecting an processing over 2,100 gigabytes of ESI)).**  An examination of KPMG's invoice reveals only five (out of the hundreds of) activities can plausibly be considered data conversion: three times when KPMG "parsed out files" from their original form (dated 7/16/2008, 7/17/2008, and 7/18/2008), once when KPMG converted "data deliverables for import into review tool" (on 1/13/2009), and once when KPMG copied and delivered data (on 4/24/2009).  (*See* Doc. 318-2, pp. 5–18).  The total costs of those activities—a cost taxable under § 1920(4)—is **$2,760.00**.

But the Court does not have the authority to tax Allstate's remaining costs for "creating of litigation database, processing of ESI, extraction of metadata."  *Hecker* says nothing about such costs, and the persuasive reasoning in *Race Tires* leads to the conclusion that "gathering, preserving, processing, searching, culling and extracting ESI simply do not amount to 'making copies.'"  **Race Tires, 674 F.3d at 170.**  Aside from the $2,760 in costs discussed in the above paragraph, the $129,243 bill for KPMG's ESI services is composed of activities like "processing of electronically stored information," "project supervision and support," "analysis of metadata," and "work on production."  (See Doc. 318-22, pp. 5–18).  Those costs are not taxable. **See Race Tires, 674 F.3d at 169 (the services leading up to the actual production do not constitute making**

---

[6] **See Race Tires, 674 F.3d at 162 n. 6** ("OCR is a technology process that translates and converts printed matter on an image into a format that a computer can manipulate and therefore renders that matter text searchable.") (internal quotation marks and citations omitted).

copies); *id.* (**"The decisions that allow taxation of all, or essentially all, electronic discovery consultant charges . . . are untethered from the statutory mooring."**).  The Bill of Costs will therefore be **reduced by $126,483.00**.

### B. Deduplication of ESI

According to the declaration of Allstate's Attorney, deduplication is the process by which duplicate documents within a large collection of documents are eliminated in order to "save time and reduce cost."  (Doc. 318-1, pp. 3–4).  Deduplication is therefore the type of activity that can be classified as a step leading up to the production of copies or materials.  *Race Tires* accordingly held that deduplication was not taxable as copies.  ***See Race Tires*, 674 F.3d at 171 n.11 (all non-file-conversion "activit[ies], such as searching, culling, and deduplication . . . are not taxable.").**  Taxing deduplication costs is outside the statutory limits of court authority: § 1920 allows taxation of copies, it "does not say that activities that encourage cost savings may be taxed." ***Id.* at 169.  *Accord Northbrook Excess & Surplus Ins. Co. v. Proctor & Gamble Co.*, 924 F.2d 633, 644 (7th Cir. 1991) (a computer program that reduces the time and costs associated with reviewing document is not necessarily a taxable cost under § 1920).**  Allstate's Bill of Costs will therefore be **reduced by $131,127.00**.

### C. Creation of TIFF Images

Cost-shifting for the creation of TIFF images is allowed by *Hecker's* general rule that data conversion and the creation of easily searchable file formats for discovery-related purposes is compensable.  Moreover, the Third Circuit specifically articulated that TIFF creation is compensable under § 1920(4) as "copies of any materials."  The $34,332.00 in Allstate's costs for hiring KPMG to create TIFF images for discovery is compensable as copies of any materials under § 1920(4), and will be taxed accordingly.

### D. *Electronic Data Hosting*

      *Hecker* speaks to data conversion and the creation of easily-searchable file formats, but not to the storage of the data produced by such conversion.  **See Hecker, 556 F.3d at 591.** Under *Race Tires*, the Court considered whether "collecting and *preserving* ESI" is a taxable cost, and concluded it was not.  **Race Tires, 674 F.3d at 167 (emphasis added).**  Here, then, the Court lacks the power to shift the cost of data storage onto the non-prevailing party under § 1920(4).  **See id. at 171 ("Neither the language of § 1920(4), nor its history, suggests that Congress intended to shift all the expenses of a particular form of discovery—production of ESI—to the losing party.").**

      Section 1920(4) does not allow taxation of costs for electronic data hosting.  The Bill of Costs will therefore be **reduced by $498,050.00**.

### E. *Preparation of Productions of ESI*

      The itemization submitted by Allstate indicates it incurred "costs in the amount of $103,947.00 for the preparation of productions of ESI," which it asserts "are recoverable."  (Doc. 318-4, p. 5).  Neither the itemization, the declaration submitted by Allstate's attorney (Doc. 318-1), nor the declaration submitted by KPMG's ESI principal (Doc. 318-2) expands on the meaning of "preparation of productions of ESI."

      Once again, *Hecker* does not speak to the preparation of ESI production, but *Race Tires* fills the void:

> It may be that extensive "processing of ESI is essential to make a comprehensive and intelligible production.  Hard drives may need to be imaged, the imaged drives may need to be searched to identify relevant files, relevant files may need to be screened for privileged or otherwise protected information, file formats may need to be converted, and ultimately files may need to be transferred to different media for production.  But that does not mean that the services leading up to the actual production constitute 'making copies.'"

*Race Tires*, 674 F.3d at 169.   Accordingly, costs for preparing ESI production are non-compensable under § 1920(4), either as exemplification or as copies of any necessary materials.  The Bill of Costs will therefore be **reduced by $103,947.00**.

### F.  Creation of Hard Copy Productions

Allstate incurred $21,297.47 in costs for "creating of hard copy productions," (Doc. 318-4, p. 5), apparently for "external duplicating" that Allstate's attorney claims were necessarily obtained for use in the case (Doc. 318-1, p.4).  Plaintiffs do not dispute that the hard copies—which are compensable as copies under § 1920(4)—were necessary for the case.  The $21,297.47 will therefore be taxed.

### G.  Photocopies

Allstate incurred $290.30 in costs for "making photocopies of documents."  (Doc. 318-4, p. 6).  That amount is the same Allstate's attorney declares was spent on "internal duplicating," which he asserts was necessarily obtained for use in the case.  (Doc. 318-1, p. 4). Plaintiffs do not contest the necessity of Allstate's photocopy bill, and photocopies are compensable as copies within the plain meaning of § 1920(4).  The $290.30 will therefore be taxed.

### H.  Graphics Used at Hearings

Allstate incurred $40,232.18 in costs for "graphics used at hearings," (Doc. 318-4, p. 6), which its attorney asserts were necessarily obtained for use in the case (Doc. 318-1, p. 4).  Again, Plaintiffs do not dispute the necessity of the graphics.  Allstate submits six invoices in support of the graphics subtotal.  Those invoices reveal payment for service costs in hiring a third party (which apparently assigned three consultants to the job) to prepare graphics for Allstate.  Those costs fall well within "exemplification" as the Seventh Circuit defines it: preparing maps, charts, graphs, photographs, motion pictures, photostats, and kindred materials; and graphics services for preparing

exhibits. *Cefalu v. Vill. of Elk* Grove, 211 F.3d 416, 427–28 (7th Cir. 2000) (emphasis added). The $40,232.18 in exemplification costs will therefore be taxed.

### I.  Transcripts

Fees for printed or electronically recorded transcripts necessarily obtained for use in the case are compensable.  **28 U.S.C. § 1920(2).**  Allstate bills $23,276.13 for transcripts, and Plaintiffs do not dispute the necessity of those transcripts for use in the case.  The $23,276.13 will therefore be taxed.

### J.  Other Costs

Though the parties do not raise the issue, the Court will not tax the amount Allstate paid for "shipping production documents to Plaintiffs' counsel."  (Doc. 318-1).  Allstate invokes no statutory or common law authority to justify compensation for its shipping costs, nor could it: § 1920 does not allow taxation of such costs.  ***Downes v. Volkswagen of Am., Inc.,* 41 F.3d 1132, 1144 (7th Cir. 1994) ("expenses of litigation that are distinct from either statutory costs or the costs of the lawyer's time reflected in hourly billing rates—expenses for things such as *postage*, long distance phone calls, xeroxing, travel, paralegals and expert witnesses—are part of" reasonable attorney's fees, not costs) (emphasis added); *Heiar v. Crawford Cnty.,* 746 F.2d 1190, 1203 (7th Cir. 1984).  *See also Branham v. Snow,* 2006 WL 1750443, at \*12 (certain out-of-pocket expenses, including postage, are recoverable not as costs but as part of reasonable attorney's fees) (citing *Heiar* and *Downes); Moore v. Univ. of Notre Dame,* 22 F.Supp. 2d 896, 915 (N.D. Ind. 1998) (Section 1920 does not provide for taxing postage and courier costs).**  Since the Court's power under Rule 54(d)(1) is circumscribed by § 1920, which does not permit taxation for Allstate's shipping costs, the Court declines to tax those costs.  ***See W. Va. Univ. Hosp., Inc. v. Casey,* 499 U.S. 83, 86 (1991) (Section 1920 defines "the full extent of a**

federal court's power to shift litigation costs absent express statutory authority to go further."). Accordingly, the Court **reduces the Bill of Costs by $469.16**.

Taking into account the above reductions, § 1920 allows for taxation of the plaintiffs for Allstate's costs in the amount of $122,188.08:

| | Allstate's Cost | Amount Asserted | Amount Taxed |
|---|---|---|---|
| A | Creation of Litigation Database, processing of ESI, extraction of metadata, & rendering ESI word searchable | $  129,243.00 | $  2,760.00 |
| B | Deduplication of ESI | $  131,127.00 | $  - |
| C | Creation of TIFF images | $  34,332.00 | $  34,332.00 |
| D | Electronic Data Hosting | $  498,050.00 | $  - |
| E | Preparation of Productions of ESI | $  103,947.00 | $  - |
| F | Creation of Hard Copy Productions | $  21,297.47 | $  21,297.47 |
| G | Photocopies | $  290.30 | $  290.30 |
| H | Graphics used at Hearings | $  40,232.18 | $  40,232.18 |
| | **Subtotal: Exemplification & Copies of Any Materials** | $  958,518.95 | $  98,911.95 |
| I | **Transcripts** | $23,276.13 | $  23,276.13 |
| J | **Other Costs** | $  469.16 | $  - |
| | *TOTAL* | $  982,264.24 | $  122,188.08 |

But that does not end the matter. The Court now turns to two remaining issues: the proportion of the costs the two remaining Plaintiffs should pay, and whether they are entitled to the indigency exception.

### 2. Pro Rata Share

Class representatives must have some commitment to their case, and that includes exposure to costs under Rule 54(d)(1). In *White v. Sundstrand Corp.*, the Seventh Circuit held eight class representatives, rather than the 160 members of the class they represented, jointly and severally

liable for Rule 54 costs. **White v. Sundstrand Corp.**, **256 F.3d 580, 586 (7th Cir. 2001).** The appellate court reasoned that "[e]ight persons caused [the] litigation to be brought, caused the costs to be incurred, and should make the prevailing party whole." **Id.** In *White*, the Seventh Circuit expanded on an earlier case, *Rand v. Monsanto Co.*, where it premised its decision on the idea that "the named plaintiff must have *some* commitment to the case, so that the 'representative' in a class action is not a fictive concept." **Rand v. Monsanto Co.**, **926 F.2d 596, 599 (7th Cir. 1991).** The *Rand* panel went on to reject a *per se* rule that a representative plaintiff must be willing to bear all—"as opposed to a pro rata share"—of an action's costs. **Rand v. Monsanto Co.**, **926 F.2d 596, 601 (7th Cir. 1991).** So while Rule 54 costs should be assessed against class representatives, controlling caselaw contemplates those costs can be assessed on a pro rata basis.

Here, there is good cause to reduce the costs assessed against Johnson and Autrey so that they are responsible for two-elevenths of the Bill of Costs—the costs proportional to their responsibility for the litigation. **See Rand, 926 F.2d at 599 ("The very feature that makes class treatment appropriate—small individual stakes and large aggregate ones—ensures that the representative will be unwilling to vouch for the entire costs.").** Allstate is the prevailing party in this case—not only against the two remaining plaintiffs, but against the nine class representatives who were voluntarily dismissed *with prejudice* in April 2011. Allstate stipulated to that dismissal, and to each side bearing its own costs. (Doc. 281, Doc. 282).

The Court is aware of *White*'s dictum that plaintiffs had "not cited, and we have not found, any case holding that responsibility for costs must be parceled out so that no member of a class pays more than a *pro rata* share." **White, 256 F.3d at 586.** But in that case, the Seventh Circuit based its decision on the differences between eight class representatives and the class members they represented, *not* among the eight representatives themselves. The reduction of taxed costs in this case is based on the differences among the eleven class representatives who have been dismissed

with prejudice.  The undersigned does not conclude (as *White* forbade) that the class representatives should not bear the costs, but that *the two remaining* class representatives should not be left holding the bag when Allstate stipulated to the dismissal of nine other class representatives only four months before Autrey and Johnson sought dismissal.  The result in *White* depended on the fact that there was "no justification for shifting the costs to [the defendants] to bear the costs of the eight plaintiffs' mistaken litigation choices."  Here that justification exists: Allstate chose not to pursue costs against nine of the eleven named plaintiffs against whom it prevailed.

So unlike *White*, where "[e]ight persons caused [the] litigation to be brought, caused the costs to be incurred, and should make the prevailing party whole," here eleven persons brought the litigation and caused the costs to be incurred.  The Court declines to assign eleven persons' responsibility to the two remaining plaintiffs.  The Court will therefore reduce the remaining Bill of Costs by nine-elevenths (or 81.82%), the proportion of class representatives from whom Allstate could have sought costs, but did not.  The Bill of Costs is further **reduced** by $99,974.88, **to $22,213.20**.

### 3.  Indigency Exception

Rule 54(d) gives district courts the discretion to not assess costs against the losing party.  ***Rivera v. City of Chi.*, 469 F.3d 631, 634 (7th Cir. 2006).**  One reason courts consider in denying costs is a plaintiff's indigency.  ***Id.* (citing *Mother & Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003)).**  Defendant claims Plaintiffs' contracts with counsel indemnify Plaintiffs from Rule 54 costs, thus taking the indigency exception off the table.  That argument is worth a brief discussion but is, in the end, of no real consequence, since the Court finds Plaintiffs Johnson and Autrey are not entitled to escape payment of costs via the indigency exception.

### A.  Plaintiffs' Contracts with Counsel

Defendant asserts that, "in circumstances like those present here, class counsel should pay costs, as they agreed with named Plaintiffs to do." (Doc. 329, p. 4).  Defendant points to the contracts between Plaintiffs and their counsel, each of which contains the following provision:

> THIS IS A CONTINGENT FEE AGREEMENT — ANY MONETARY OBLIGATIONS OF THE UNDERSIGNED AND THE OTHER CLASS MEMBERS ARISING OUT OF THIS CLASS ACTION LAWSUIT ARE CONTINGENT UPON A FAVORABLE SETTLEMENT, JUDGMENT OR OTHER RESOLUTION ACCEPTABLE TO THE CLASS REPRESENTATIVE AND TO THE COURT, **i.e., IF NO RECOVERY IS HAD IN THE CASE, NEITHER I, NOR ANY OTHER MEMBER OF THE CLASS, WILL OWE MY ATTORNEYS ANY MONEY.**

Plaintiffs—or more specifically, Plaintiffs' counsel—disagree.  According to their argument, Allstate misconstrues *White v. Sunstrand Corp.* since the case does not hold that class action contingency agreements automatically indemnify plaintiffs or mandate taxation of costs against counsel.

Plaintiffs miss the mark: Allstate cites *White* not for the proposition that costs *must* be taxed against counsel, but that counsel (depending on the contract with their client) *may* be required to indemnify their clients, that the contingency agreements here make this such a case, and that such indemnification undercuts Plaintiffs' asserted indigency.  Allstate's reading of the caselaw is correct: lawyers can contract to underwrite a plaintiff's costs, ***Rand v. Monsanto Co.*, 926 F.2d 596, 600 (7th Cir. 1991)**, and if that were the case here, the Court would be hard-pressed to allow Plaintiffs to avoid taxation of costs based on indigency.

However, Allstate's argument falls short.   The fee agreement here does not contemplate an outcome where costs are taxed against Plaintiffs.[7]   The contract speaks of the

---

[7] The Court notes that it appears neither Plaintiff contemplated being held responsible for payment in the eventuality that Rule 54 costs were assessed.  In a deposition, Mr. Johnson agreed that, if he had exposure to $500 of personal risk, it may have affected his decision to be a class representative.  (Doc. 329-1, pp. 3–4).  And Mr. Autrey, when asked "If you lose this case, will you have to pay, do you have any obligation to pay," replied with a simple "No." (Doc. 329-2, p. 4).  If Plaintiffs did not know they could be responsible for costs, their counsel certainly should have known of the possibility—their sur-reply indicates they did: "*White* . . . recommends that class plaintiffs secure protection against cost awards from their Counsel." (Doc. 330, p. 4).  **See also *White v. Sundstrand Corp.*, 256 F.3d 580, 586 (7th Cir. 2001) (class action suits are "designed to generate a substantial financial return, [and] induce[] lawyers to compete for the opportunity to represent the class.").**

monetary obligations between Plaintiffs and their counsel, not the potential obligation Rule 54 would create between Plaintiffs and Defendant. But even if the contract were to be read so broadly as one where counsel indemnifies Plaintiffs, the Court need not analyze whether it would undercut Plaintiffs' indigency—the plaintiffs are not entitled to an indigency exception in the first place.

### B. No Indigency Exception for Plaintiffs

Rule 54(d) gives district courts the discretion to not assess costs against the losing party. **Rivera v. City of Chi., 469 F.3d 631, 634 (7th Cir. 2006).** One reason courts consider in denying costs is a plaintiff's indigency. **Id. (citing Mother & Father v. Cassidy, 338 F.3d 704, 708 (7th Cir. 2003)).** But the presumption that costs will be awarded is a strong one. **U.S. Neurosurgical, Inc. v. City of Chi., 572 F.3d 325, 333 (7th Cir. 2009).** The Seventh Circuit has held that a plaintiff who fails to establish he is incapable of paying court-imposed costs now "or in the future" is not entitled to avoid court-assessed costs via the indigency exception. **McGill v. Faulkner, 18 F.3d 456, 459–60 (7th Cir. 1994).** In *McGill*, even a court finding that the plaintiff was presently indigent did not prevent costs from being assessed against him, since the court was "not convinced that [the plaintiff] will not *ever* be able to pay the order imposing costs." **Id. (emphasis added).**

Here, neither Johnson nor Autrey has shown an inability to pay Allstate's costs (as reduced above) in the future.[8] Though neither Johnson nor Autrey have large incomes or great assets, each appears to have the means to eventually pay the reduced Bill of Costs. Johnson's $1,400 monthly income is currently less than his monthly expenses of $1,491. (*See* Doc. 327-1). But $290 of that monthly budget goes to three debts ($100 to the IRS, $80 to Lowe's, $110 to Ashley

---

[8] If Allstate's $950,000-plus Bill of Costs had not been reduced, the Court would view the matter differently. The reduction is a factor in the Court's analysis.

Furniture) that should be extinguished within the next eighteen months.[9]  That monthly $290 (even assuming Johnson incurs new debt every month because he is living slightly beyond his means) can be re-allocated to the costs from this case once Johnson's debts are paid.  And Autrey's current monthly income of $1,518 outstrips his $792 monthly expenses by almost $800 per month.  In short, and with special consideration for the substantial reduction in costs in the case, the Court finds that neither remaining plaintiff should benefit from the indigency exception to Rule 54(d).  **See McGill, 18 F.3d at 459.  See also id. at 460 ("[E]ven if [the pro se plaintiff] had . . . demonstrated to the district court's satisfaction that he was indigent, the court still would not have abused its discretion by awarding costs . . . pursuant to Rule 54(d)")**.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Allstate's Bill of Costs (**Doc. 318**).  The Clerk is **DIRECTED** to tax Plaintiffs Johnson and Autrey in the amount of $22,213.20.  Plaintiffs are jointly and severally liable to Allstate.  **See White v. Sundstrand Corp., 256 F.3d 580, 587 (7th Cir. 2001).**  The Clerk is **DIRECTED** to edit the docket to reflect the proper spelling of Plaintiff Autrey's surname.

**IT IS SO ORDERED.**

**DATE: October 16, 2012**                    **/s/ Stephen C. Williams**
                                              **STEPHEN C. WILLIAMS**
                                              United States Magistrate Judge

---

[9] At his current rate of payment, Johnson's $2,000 debt to the IRS will be extinguished in or about July 2013; his $2,000 debt to Lowe's in or about December 2013; and his $3,000 debt to Ashley Furniture in or about March 2014.